### HARRISON WHITSON'S ADM'R v. ALFRED SMITH.

Where the plaintiff and defendant having formed a partnership in the business of sawing lumber, made a contract in writing, with the town of Bastrop, whereby they acquired the exclusive right to enter the Pinery, belonging to the town tract, for the period of ten years, to cut and saw pine timber, with two saws, in consideration whereof they contracted to pay two hundred and fifty dollars, every six months, and the plaintiff being unable to furnish his share of the cap- ital necessary to commence the business, agreed verbally with the defendant, that the latter should furnish the means to start both saws, and that the plain- tiff should have a certain time to pay for one of them, and then each one should

run one of the saws for his own account, and that if the plaintiff failed to pay in the time stipulated, he relinquished all his rights in the matter, and he did fail, and had no more to do with the business, but several years afterwards brought this suit for an account, &c., it was held that the verbal agreement, being executed, was binding on the plaintiff, and that he could not recover. See this case as to the Statute of Frauds.

Appeal from Bastrop.

*Oldham & Terrell*, for appellant.

*I. A. & G. W. Paschal*, for appellee.

Lipscomb, J.    The plaintiff and defendant became joint tenants, by a lease from the corporation of the town of Bastrop, for the term of ten years, of the use of as much pine timber in the Pinery, as could be sawed up by two saws, for which they were to pay five hundred dollars per year, at half yearly payments, amounting to five thousand dollars for the term.

There was a verbal contract between the two, of partnership, to be equal in the expenditures and the profits.    Whitson not being able to pay anything towards the purchase of the mills, nor for putting them in operation, it was agreed between them, that Whitson should have the privilege of paying for one of the mills within three weeks, and putting it up and working it on his own account, and Smith should take the other one and put it up and work it on his account.

Smith had become individually responsible for both the mills, and the cost of their transportation to the Pinery, where they were to be worked.    And if Whitson did not pay for the mill, within the three stipulated weeks, Smith was to put both up on his own account, and Whitson agreed that he would relinquish his whole interest in the enterprise.    This was a verbal arrangement.    Whitson was not able to raise the money.    Smith proceeded to put the mills up, at his sole expense ; and, after using them for near two years, sold them.    There was no

claim interposed by Whitson, until after the sale of the mills, and his inability to pay anything towards the purchase of the mills, or the expense of putting them in operation. After the sale, Whitson claimed to be a partner, and joint owner of the mills, and commenced this suit, praying that an account should be taken, and that after crediting Smith with the amount of his expenditure, the balance of the amount for which the mills were sold, should be equally divided between himself and Smith. It is alleged that Smith had given Whitson no guarantee of indemnity against his, Whitson's, liability to the corporation of Bastrop, for the amount of money to be paid for the lease.

There were a verdict and judgment for the defendant, which judgment is now alleged, by the plaintiff, to be erroneous, and sought to be reversed.

We will only notice the most material grounds on which the appellant claims a reversal of the judgment. It is insisted that the verbal arrangement between the parties was in direct contravention of the Statute of Frauds, not being in writing, and therefore not binding upon the appellant. This would certainly be true, if the defendant had rested his defence upon the naked, verbal assignment of the appellant, of his interest in the lease, unaccompanied with any other equitable circumstances. It may, however, be questionable whether the Statute of Frauds could have impaired a voluntary, verbal relinquishment of one tenant in common to the other, of the entire use of the lease, for a sufficient consideration; but to put it in its strongest point of view, the Statute could not control, nor ever has been regarded as controlling, an equity that has grown up by the acts of the parties themselves. What acts will raise an equity, outside of the Statute, and dependent upon their own particular circumstances, as to justify sustaining such verbal contract, has been so often discussed and adjudicated by this Court, that it cannot be necessary to enter again into an examination of the principles of equity jurisprudence, that

control such cases. We have held that a contract, illegal in itself at the time it was made, may be sustained by the subsequent acts of the parties, to prevent gross injustice and hardship; or, in other words, that a party to an illegal contract will not be permitted to set up the illegality of the contract, to sustain and perpetuate a fraud upon the other party. (See Dugan's Heirs v. Colville's Heirs, 8 Tex. R. 126; Hunt *et al.* v. Turner *et al.*, 9 Tex. R. 385.)

The circumstances, raising the equity in this case, are, the payment of all the money for the mills; the labor and expense of putting them up; the furnishing the teams, wagons, &c., necessary for carrying on the enterprise; and the fact that it was all within the knowledge of the plaintiff, and no objection on his part, no disclaimer of his verbal contract, until after the lapse of near two years, when the enterprise had resulted fortunately for Smith, in the sale of the mills. The verbal contract had been fully executed, and the experiment, as it was called by the plaintiff, had been eminently successful, before the plaintiff attempted the repudiation of the verbal agreement. Had it proved unfortunate, no objection would have been heard of from the plaintiff. It would be iniquitous and repulsive to sound morality and a sense of good faith and fair dealing, between man and man, to permit the plaintiff to set up the illegality of this verbal contract, after it had been executed by the defendant, and he had bestowed his labor, expended his money, and incurred all the risk of what was regarded as an experiment.

It was said in the argument, in behalf of the plaintiff, that the verbal contract was void for want of mutuality; that the plaintiff had received no indemnity for his liability to the corporation, on the lease. He does not seem to have regarded that liability as of any consequence; and from the evidence of his insolvency, it is not likely that he will ever suffer from omitting to secure himself by a sufficient indemnity against the contingency of having to pay for the lease. He never asked

an indemnity, and if he believes now that he is in danger, he could be secured by an application to the Court in proper form, in a suit *quia timet*. There was much of irrelative matter in the evidence, but nothing that could have controlled the result, or varied it; and it consequently affords no ground for a reversal of the judgment. The judgment is therefore affirmed.

Judgment affirmed.