MARGARET TAYLOR v. JAMES ASHLEY.

In this case it was held that there was error in the refusal of the Court below to grant a new trial, on the ground that the verdict was contrary to the evidence, and suggested the probability of undue influence.

Where a party seeks to enforce a parol agreement for the sale of land, by a certain description, he must, in addition to the proof of part performance required to take the case out of the Statute of Frauds, establish the terms of the contract to be clear and definite as to the locality and description of the land, as claimed by him.

See this case for where a party contracts by parol to sell an undivided number of acres out of a larger tract, in a particular form, at such place as the vendee should select, with certain reservations, and the vendee having paid the purchase money, made his selections and erected valuable improvements, the vendor by his own act disables himself from conveying at the place selected, and in the form stipulated.

Appeal from Bell. Suit by the appellee against appellant, for specific performance of a parol contract for the sale of one hundred acres out of a survey of seven hundred and thirty-five, part of the headright of William Froquier, on the Leon River. The plaintiff had paid the purchase money, $62 50, the contract being in 1847, and had taken possession and made improvements. After the suit was commenced, there was a partition of the tract between the defendant and another tenant in common with her, the division line of which partition ran through about the middle of the hundred acres, which the plaintiff claimed in his original petition; after which, he filed a supplemental petition, claiming to extend his lines along the river for quantity, retaining the survey in a square.

The defendant contended, besides denying entirely the right of the plaintiff to recover, that the land was to be surveyed in an oblong shape, giving it a front on the river proportional to the front of the whole survey; and she also denied the right of the plaintiff to extend his survey along the river for

quantity, and contended that at most he was only entitled to damages for the portion of his first survey, which fell to the other tenant in common, in the partition.

The extension of the survey in a square form, as claimed by the plaintiff, would embrace a house or cabin, which the defendant had expressly stipulated should not be embraced, and into which the defendant, after the contract with plaintiff, had moved, clearing a couple of acres of ground adjoining it. The proof was that with this reservation, and another not now important, the plaintiff was to take the land at any part of the survey which he might select, and that he had made his selections and had it surveyed so as to include the house and field expressly reserved before commencing this suit ; it was averred by him, that the defendant had consented to such survey, but the proof was to the contrary.

The jury found for the plaintiff, that the allegations in his petition and supplemental petition were true, and the Court decreed that the plaintiff take one hundred acres in a square form on the river, as claimed in the supplemental petition, which included the house or cabin and cleared land which had been expressly reserved by the defendant, in making the sale.

*Oldham, Marshall & Terrell,* for appellant.

*J. Taylor,* for appellee.

WHEELER, J. The question to be determined upon this appeal is, whether the verdict and judgment thereon are warranted by the evidence.

The answer admits the making of a parol contract, between the plaintiff and defendant, for the sale of one hundred acres of land, as alleged ; but denies that the plaintiff has performed his part of the agreement, and insists that the contract is not binding, because not in writing, as required by the Statute of

Frauds.   The proof, however, is full and satisfactory, not only to the fact of the making of such a contract, but that, in pursuance thereof, the plaintiff went into the possession of the land, erected a dwelling house, and made improvements thereon, with the express consent of the defendant; and that he has fully paid the purchase money.   There can be no question that these facts are sufficient to take the case out of the operation of the Statute of Frauds, and to entitle the plaintiff to a specific performance, if the terms of the contract were satisfactorily proved, as to the precise locality and description of the land, and the plaintiff's case were, in other respects, free from difficulty.

The controversy was as to the terms of the contract, respecting the description of the land, or the form in which it should be set apart to the plaintiff.   There appears to have been a prefectly good understanding between the parties, for a considerable time after the making of the contract, and until the plaintiff proposed to have the land surveyed and set apart to him.   Both resided and had made improvements upon the tract out of which it was to be taken; and when they met, by appointment, to have the plaintiff's land set apart to him, he insisted on a different beginning point from that admitted by the defendant; and also upon having the land surveyed in a square form, so as to give a larger front on the river ; and also upon running the lines of the survey in such a manner as to include the defendant's improvements.   To this the defendant objected, and insisted that the point of beginning was to be at a certain spring on the river mentioned by the witnesses, and that the lines were to run so as to include the spring, and at the same time so as to give the plaintiff only the usual front on the river, and not to include the defendant's improvements. The plaintiff would not consent to this, but declared his determination to run the lines as he pleased ; whereupon the defendant gave him notice, that if he did run the lines as he proposed she would not make him a title to the land.   Such was the com-

mencement of this controversy, and these are the main issues which the parties have presented in their pleadings—the defendant, in her answer, making the same objections to the plaintiff's pretensions, and insisting on the same construction and terms of the contract, as at the time of its proposed execution. The plaintiff appears to have relied, to make out his case, and the jury to have rested their verdict, as respected the description and locality of the land, on the testimony of witnesses, as to statements made by the defendant in conversation—and these were varient ; but had they been consistent, there was, to say the least, a great preponderence of evidence the other way, conducing to show very clearly, if not conclusively, that the understanding of the contract, as contended for by the defendant, as to the locality of the land, was the true one. The only witness who spoke of being present when the contract was made, testified expressly to its terms, as claimed by the defendant ; and the subsequent acts of the parties, and the testimony of the witnesses who detailed what transpired at and after the disagreement as to the manner of running the lines, strongly corroborate that witness's statement. It will not be disputed that the evidence of what transpired, on the subject, between the parties themselves, is entitled to much more weight than the recollection of witnesses as to what was said by the defendant in general conversations. Moreover, it is not to be credited, that the defendant would have gone on to make improvements upon the land, if she had sold it to the plaintiff ; nor would any honest and fair man, under the circumstances, after permitting the defendant to make improvements, in the confidence of enjoying their benefits, insist on so running out the land purchased, as to include those improvements and take the benefit of the labor bestowed upon them, without compensation. If the contract would have authorized the running of the lines as claimed by the plaintiff, his silence, while those improvements were in progress, would preclude him from afterwards claiming the land on which they were made. To

seek to include them in his survey, under the circumstances,
was an act of bad faith on his part, which a Court of equity
would not sanction.  But we think there is little doubt, that
the contract did not authorize the making of the survey as claim-
ed by the plaintiff, and that it was wholly the fault and wrong
of the plaintiff, in insisting upon that to which he was not en-
titled, that the contract was not performed on the part of the
defendant.  The plaintiff appears to have acted in a harsh,
arbitrary and unjust manner ; and this litigation is, doubtless,
owing to the temper and disposition he manifested.  It is mat-
ter of surprise that, under the circumstances of the case, as
disclosed in evidence, the jury should have found a verdict in
his favor.  But as there was some evidence in support of the
finding, as respects the locality and description of the land,
and there can only be said to be a very strong preponderence
of evidence against it, we might hesitate upon this point, to
disturb the verdict.  But there are other respects in which the
verdict is without and against evidence.  It expressly finds
" the facts set forth in the petition are true ;" when there is no
evidence whatever to support its allegations of fraud ; and
its averment that the defendant assented and expressly agreed
to the survey as made, is indisputably proved to be untrue.
In these respects, at least, the verdict is manifestly unsupported
by or palpably against the evidence ; and there is a very strong
preponderance of evidence against it in other material respects.
Its unreserved and unqualified affirmation of the truth of the
petition certainly was not warranted by the evidence, and is
calculated to induce the apprehension that the jury acted un-
der some undue influence or prejudice.  Under the circum-
stances, the defendant, we think, was well entitled to a new
trial, and there was error in refusing it.  The judgment will,
therefore, be reversed, when the parties may, if they see proper,
and it is to be hoped they will, so modify their pretensions as
to avoid the necessity of protracting this unprofitable litiga-
tion.  If the plaintiff will accept a conveyance of the land,

which the defendant is capable of making, with such locality
and description as, in her answer, she admits he was to receive
by the terms of the contract, she can have no pretence to con-
test his right, and by making such conveyance may relieve
herself from further liability ; or if, on the other hand, the de-
fendant will execute a conveyance of the land as now claimed
by the plaintiff, there will be an end of the controversy.  But
if the parties will not thus avoid the necessity of further liti-
gation, to entitle the plaintiff to the decree he asks, it will de-
volve on him, on another trial, to establish the terms of the
contract to be clear and definite as to the locality and descrip-
tion of the land, as claimed by him.  For, if the terms of a
contract are uncertain or ambiguous, or are not made out by
satisfactory proofs, a specific performance will not (as indeed,
upon principle, it should not) be decreed.  For, it is said, a
Court of equity ought not to act upon conjectures ; and one of
the most important objects of the Statute of Frauds was, to
prevent the introduction of loose and indeterminate proofs of
what ought to be established by solemn written contracts.—
(2 Story's Eq., Sec. 764.)  In former times, it is said, very able
judges felt themselves at liberty to depart from so reasonable
a principle of adjudication, and granted relief, notwithstanding
the uncertainty of the terms of the contract.  In other words,
the Court framed a contract for the parties, *ex aquo et bono,*
where it found none.  In modern practice, such a latitude of
jurisdiction has been deemed unwarrantable upon any sound
principle ; and accordingly it has been expressly renounced.
The Court will institute an inquiry to ascertain the terms of
the contract ; but if such an enquiry should end in leaving it
uncertain, so that the Court cannot say what the precise terms
of the contract are, a specific performance will not be decreed.
(Ibid.)  It would be inequitable to carry a contract into effect,
where the Court is left to ascertain the intentions of the par-
ties, by mere conjecture ; for it might be guilty of the error of
decreeing precisely what the parties never did intend or con-

template. (Id., Sec. 767.) To entitle the plaintiff to his decree for a specific performance, therefore, he must establish the terms of the contract as claimed by him, unless he will accede to the terms admitted by the defendant in her answer. But the contract being proved, should it turn out that, by reason of the partition of the land between the defendant and another, made subsequently to the contract between the plaintiff and defendant, the latter is unable strictly to comply with the contract, the plaintiff will be entitled to have the contract specifically performed, as far as the defendant can perform it, and to have compensation for the residue. (Id., Sec. 779 ; 17 Ves. 394 ; 9 John. R. 465.) If, however, the defendant is able to make title to the quantity of land contracted for, without any material variation of the terms and intention of the contract, as to its locality and description ; if her lands adjoining are of like description, quality and value, and the lines of the survey may be so run as to include the quantity of land contracted for, without prejudice to the defendant, or materially varying the terms of the contract, it is not perceived why a specific performance may not be decreed ; in analogy to the doctrine, that, if there be a misdescription in the circumstances of the quality or quantity of the land, and the misdescription is not very material, and admits of compensation, Courts of equity will decree a specific performance. (2 Story's Eq., Sec. 777, and cases cited.)

These general principles may suffice for the direction of the parties in the future conduct of the cause ; and to the end that the truth and right of the case may be attained, the judgment is reversed and the cause remanded.

Reversed and remanded.