## A. M. Cox v. Nancy Bray et al.

Where the holder of a land certificate executed his power of attorney, author-izing his agent to locate the same, to receive the patent thereon, and to sell and convey the land, it was competent for a defendant, claiming the land under the attorneys to prove by parol testimony that the transaction be-tween the holder of the certificate and his attorneys was in fact intended to be a sale of the certificate by the former to the later.

Such evidence was consistent with the instrument, and was not liable to the objection, that it tended to vary or contradict the power of attorney.

Proof of the real intention was only explanatory of the object and purpose of the power of attorney, showing that that instrument was merely ancil-lary to the sale of the certificate; and in such case the power of attorney and the sale of the certificate were collateral and independent facts, entirely consistent with each other.

The further objection, that such parol evidence was inadmissible to establish title to land after the lapse of some seventeen years would be entitled to much weight, if the party proposing thus to establish his title was the plaintiff in the case, seeking to recover the land from another party in possession. But when the party thus offering to establish his title is him-self the defendant, holding possession of the land under the power, to pre-clude him from so doing by reason of the lapse of time would be to reverse the law of limitation, and to give to the plaintiff, instead of the defendant, the benefit of the delay of the former in the prosecution of his suit. Such evidence however, though admissible in behalf of a defendant, might be much impaired in weight by reason of such a lapse of time.

Although a title thus resting in parol would, even after such a lapse of time, be available as a defense to the party claiming under it, yet, unless the delay should be satisfactorily accounted for, it would not sustain an action by him for a specific performance, nor entitle him to relief of that charac-ter sought by way of cross-bill or otherwise.

A sale of an unlocated land certificate is not within the statute of frauds, and it is therefore not necessary that it should be proved by writing. (See Pas-chal's Dig., Art. 3875, Note 904.)

In principle, the sale of a floating land certificate is not distinguished from a parol assignment of a title bond, or from a parol locative contract, trans-ferring part of a land certificate in consideration of its location, &c.; in both of which cases this court has held, that the statute of frauds has no application.

Even if the sale of the certificate were within the statute of frauds, yet the payment of the purchase-money, the location of the certificate, the procure-ment of the patent, and the possession and improvement of the land by the party claiming under the sale and by his vendors, are facts constituting a

sufficient equity to entitle the party possessing it to a decree of title, if he had brought his suit for that purpose within a proper time; and notwithstanding any lapse of time, such an equity is effectual to protect such party against the wrongful efforts of the grantee of the certificate, or his heirs, to deprive him of the land.

But a title, of which one of the links was thus established by parol evidence, would not sustain a plea of the statute of limitation of three years, under the 15th section of the act; for, to be sufficient for this purpose, the title, whether regular or irregular, must be in writing. (Paschal's Dig., Art. 4622, Note 1031.)

A deed executed by an attorney in fact after the death of his principal, before any attempt by the attorney to execute the power, is not merely irregular, but is absolutely void, and can no more serve as a connecting link in a chain of title than if the power of attorney had never existed. Such a deed will not support the plea of three years' limitation, and to be available at all some other section of the statute must be invoked. (See Paschal's Dig., Arts. 4623, 4624, Notes 1032, 1033.)

APPEAL from Travis. The case was tried before Hon. A. W. TERRELL, one of the district judges.

On the 13th of May, 1858, Nancy Bray and others, the appellees, as the heirs at law of John L. Bray, deceased, instituted this action of trespass to try title against one L. L. Sykes, for the recovery of one-third of a league of land in Travis county. Sykes disclaimed any interest in the land, and Cox, the appellant, became defendant on his own application, at the December term, 1858. He pleaded the general issue, and the limitations of three, five, and ten years.

On the 5th of April, 1841, a head-right certificate for a third of a league of land was issued to John L. Bray, the plaintiff's ancestor. On the 5th of June, in the same year, he executed his power of attorney to Denman & Fessenden, partners in trade, impowering them thereby to locate the certificate, receive the patent, and sell the land, with "good and sufficient deeds and conveyances, as fully as he could do" in person. Two days after the execution of the power of attorney, the certificate was located on the land in controversy. In September, 1841, Denman

conveyed to Fessenden all his interest in their partnership business and assets. In November, 1844, John L. Bray died in the State of Kentucky, intestate, leaving the plaintiffs his heirs at law. Knowledge of his death, so far as appears, was not communicated to Denman & Fessenden, or any one claiming under them, previous to the institution of this suit.

On the 29th of July, 1845, a patent for the land issued in the name of John L. Bray, which patent was admitted on the trial of the cause to be in the possession of Cox, the defendant. The land was sold by Fessenden to T. F. McKinney, by a conveyance without date, but the recitals of which indicate that it was made before the issuance of the patent, though whether before or after the death of Bray is not apparent. This conveyance was proved for record by a subscribing witness, on the 26th of January, 1848. On the 20th of September, 1854, Denman, by his deed, confirmed the sale of the land made by Fessenden to McKinney. On the 21st of March, 1857, McKinney conveyed the land to W. D. Miller, who, on the 13th of May, 1858, conveyed it to the defendant, Cox. All of these conveyances were duly recorded, and it was admitted on the trial in the District Court that the defendant and his vendors had held peaceable, adverse, continuous possession of the land in controversy since the 1st day of March, 1855, more than three years anterior to the institution of this suit.

The case came to trial at the November term, 1860. The plaintiffs put in evidence the patent to John L. Bray, and proved his death in 1844, and that they were his heirs.

The defendant offered in evidence the depositions of Coleman Denman, of the firm of Denman & Fessenden, and also the deposition of S. W. Pipkin. Besides proving the execution of the power of attorney by John L. Bray, and other matters, the testimony of these witnesses tended to prove that at the date of the power of attorney Bray

was indebted to Denman & Fessenden, and that in consideration of that indebtedness and of money paid him he sold the certificate to them. The amounts of the indebtedness and money paid were not definitely stated by the witnesses. The plaintiffs objected to this testimony for the reasons stated in the opinion of this court, and the testimony was excluded, to which the defendant excepted.

The other facts are sufficiently indicated in the opinion. There were verdict and judgment for the plaintiff, and defendant's motion for a new trial was overruled.

*C. L. Robards,* for appellant.—I. In excluding from the jury those portions of the testimony of the witnesses, Denman and Pipkin, set forth in the first, second, and third bills of exceptions filed by the defendant.

II. In refusing to the defendant a new trial for the causes set forth in his motion therefor.

It is of primary importance, in the consideration of this cause, to comprehend accurately at the outset the attitudes in which the parties litigant respectively present themselves. The plaintiffs claim in the character of heirs to the intestate, from whom they derive their pretensions to the property in suit. It is obvious, therefore, that they occupy precisely the same attitude their intestate would if he were living and prosecuting this cause. They are entitled to his rights, without enlargement or diminution, and are amenable to all defenses, legal and equitable, which could be maintained against him if he were still surviving.

On the other hand, the appellant, defendant below, occupies the attitude of an innocent purchaser for a valuable consideration, without notice of any conflicting title to the property in controversy, and in possession of that property under muniments of title reaching back for a period of seventeen years anterior to the institution of this suit. No more favored character than this is known to

the law. He stands not only invested with all the rights
derived from his vendors, whether immediate or remote,
but also sheltered by those principles of equity and those
provisions of legislative enactment expressly devised and
designed for his protection against the injustice to be
apprehended from the enforcement of technical legal rules.
Under the judicial system established in this State, these
are available in all tribunals, without regard to the distinc-
tion still existing elsewhere between law and equity.
Equitable defenses are here competent to suits based upon
legal principles. A perfect equitable title will here defeat
a suit instituted upon a perfect legal title, the latter con-
stituting but a "cloud" upon the former. So, also, the
statutes of limitation must attach to titles equitable in
their character as well as to those of a legal nature. These
are among the logical consequences of the abrogation of
the distinction between "law" and "equity."

Relying upon these principles, we maintain, 1. That
the power of attorney executed by Bray, plaintiffs' intes-
tate, operated, in connection with the contract proved, as
an assignment to Denman & Fessenden of the clear
equitable title to the head-right certificate located upon
the tract comprising the land in controversy; or, at all
events, and under the construction of the evidence most
unfavorable for the appellant, that the power of attorney
and the contract vested in Denman & Fessenden equit-
able interests in the land not defeasible by the death of
Bray, but inuring now to the benefit of the appellant,
deriving title from them.

2. That the power of attorney, and the contract of
which it was part, together with the *mesne* conveyances,
down to that of Miller to the appellant, constitute in him
title or color of title ample, concurring with the continuous
adverse possession, to entitle him to the protection of the
statute of limitation of three years.

In Carter v. Carter, 5 Tex., 93, it is expressly ruled, that

"the character of a conveyance will be determined by the clear and certain intention of the parties, and that parol evidence is admissible to show what their intention really was;" and, further, that it is the province of the jury to decide upon the intention, when it is not evidenced by the writings. (See also Mead v. Randolph, 8 Tex., 191, and McClenny v. Floyd, 10 Tex., 159.) In Carter v. Carter, the court infer fraud from the party endeavoring to maintain an absolute bill of sale against an alleged and established right of the other party to redeem, which right was proved by no writings, but arose out of parol stipulations contemporaneous with the bill of sale. By parity of reasoning, if Bray were living and endeavoring to oust appellant by means of his legal title, fraud would be equally imputable to him; and his heirs, it is obvious, can assert no right from which he would be estopped.

The cases are very numerous where parties have been allowed to prove by parol evidence that absolute deeds were made as mortgages, or upon trusts not expressed in their face. Upon principle, it must be equally competent for the appellant in this case to prove the transfer of the land certificate, accompanied with the power of attorney, to have been a sale. In Hunt v. Rousmaniere, 1 Peters, 1, the testimony of the conveyancer who drew the power of attorney was admitted to prove that it was given as security for loans of money made at the time of its execution. So also in Dunham v. Chatham, 21 Tex., 244, Chief Justice Hemphill, delivering the opinion of the court, decides that parol evidence was admitted to prove that a deed jointly to a husband and wife was intended for the sole benefit of the wife, and that such intention, so established, controlled the title.

By the authorities and unquestionable principles which we have invoked, we deem it clearly established, 1st. That it was competent for the appellant to prove by parol that the power of attorney was executed for the conveyance of

the equitable title, or of equitable interests, in the head-right certificate of Bray.

2d. The sale by Denman of his partnership interest to Fessenden, and his subsequent confirmation by deed of Fessenden's sale to McKinney, operates a clear conveyance of all interest he ever had in the certificate or the land.

3d. The next question is, with regard to the effect of the death of Bray upon the title under which appellant claims.

In the case of Hunt v. Rousmaniere, 1 Peters, 1, already cited, it will be observed that the maker of the power of attorney died before the power was executed, and yet relief would have been decreed to the party setting it up as an equitable mortgage, but for the intervention of general creditors with superior equities. This case, therefore, is an authority directly in point to the position assumed by us, that, though in a technical legal sense a power of attorney not conveying title to property may be revoked by the death of the maker, yet a party setting it up as an equitable conveyance will be protected, and his rights enforced as against the heirs of the maker. And this is still more directly decided in Knapp v. Alvord, 10 Paige, 205, where Chancellor Walworth elucidates the principles of these cases, and interprets the ruling of the Supreme Court of the United States in the case of Hunt v. Rousmaniere. In this case of Knapp v. Alvord, the chancellor distinctly controverts the doctrine that a power of attorney which does not convey title in the subject-matter is necessarily revoked by the death of the maker. He decides that, though the power simply contain authority to sell and convey, yet if it be accompanied by actual delivery of the property upon which it is to be exercised, then it is "coupled with an interest," and is not revoked by the death of the maker. That is exactly the case at bar.

We also refer to the case of Cassiday v. McKenzie, 4 Watts & Serg., 282, and call special attention to the cogent

reasoning of Mr. Justice Rogers upon the authorities and principles involved in this question.

4th. One of the causes assigned in the motion of the appellant for a new trial in the court below is alleged error in the instructions given to the jury. In the second of those instructions the jury were charged, that "the conveyances offered in evidence by the defendant, Cox, are not such as will enable him to secure right to the land by virtue of a three-years' possession of the same." This virtually predetermined the very question for the trial of which the jury was impannelled. Whether the conveyances, under which, in connection with his possession, the appellant claimed the land, were or were not available to him under the issues presented by the pleadings, was a mixed question of law and fact, and one therefore for the consideration and decision of the jury, and a summary disposition of it by a charge of the court was beyond its competency and the scope of its authority.

We fully and freely concede that the court had the right to instruct the jury in as ample or minute a manner as it saw fit with regard to the characteristics which conveyances must possess in order to constitute "title or color of title," in the sense of that phrase in the statute of limitation. So also with regard to the phrase in the statute, "consistent with intrinsic honesty and fairness," and any other feature of the statute, or its policy in general. But whether or not the deeds offered possessed such characteristics, and were or were not "consistent with intrinsic honesty and fairness," were questions purely of fact, and questions upon which the appellant had a right to the verdict of the jury, uninfluenced by any charge of the court.

5th. The construction to be placed upon the statute of limitation of three years has a material bearing upon this cause. What constitutes "title" is comparatively of easy solution. But the statutory definition of "color of title" has already been the subject of adjudication in this State;

and, in this connection, we solicit the attention of the court to the opinion of Mr. Justice Roberts, in the case of Pearson, Administrator v. Burditt, 26 Tex., 157.  It is there held, that "the terms 'intrinsic fairness and honesty,' embraced in the definition of color of title in our statute, relate to the means of proving the right of property in the land, so as to make the title equitably equal to a regular chain."  Informalities in conveyances, therefore, or irregularities in their execution, do not prevent them from constituting "color of title," provided the transaction which they prove was intrinsically an honest and fair one.  They may be inadequate to transfer the legal title, and yet constitute "color of title."  So also the equitable title which they do suffice to convey may be of a character defeasible by some other outstanding title based upon superior equities, but still it will constitute a "color of title," which the statute of limitation will mature into the superior title. "The leading object and effect of the statute of limitation," says Judge Roberts, "is to make three years' adverse possession of land mature the inferior title in the hands of the possessor into the superior title."

Applying these principles, therefore, to this case, it follows, that even though the court should differ from us in the construction of the contract between Bray and Denman & Fessenden, and hold it to have been a mortgage and not a sale, yet the title which appellant derives under it is such as to be matured into indefeasible right by the operation on it of the statute of limitation.  In this connection, we ask the attention of the court to the case of Mills v. Alexander, 21 Tex., 154.  That case furnishes many analogies to this, and, in effect, decides, that even if the transaction between Bray and Denman & Fessenden were a mortgage instead of a sale, yet the appellees do not present a case entitling them to recover the land.  It decides that after the lapse of such a length of time it does not devolve upon the appellant to aver or prove the amount

of the money considerations on which the transaction between Bray and Denman & Fessenden was based. It decides that, before the appellees could be permitted to recover, they must restore to the appellant, who succeeds to the rights of Denman & Fessenden, the money considerations, with interest, of which their intestate had the benefit. And it decides that the appellant may insist on these equities, although he may not have specially plead them. It follows, therefore, that, if the court below based its rulings on the construction that the transaction between Bray and Denman & Fessenden was a mortgage, there was still error in its instructions to the jury.

*Hancock & West,* for appellees.—I. "Parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument."

It would take up too much space to discuss all the cases that may be cited by appellant, or that occur to the mind, in which, under some circumstances, parol evidence has been allowed. Suffice it to say, that it is not believed that any case is to be found that has pretended to carry the doctrine to such a length as to entirely upset the written contract, and convert a mere power of attorney into a deed.

This subject is fully discussed in 1 Greenl. on Ev., ch. 15, §§ 275 to 305.

Furthermore, the evidence was rightly excluded, because it sought, outside of the written evidence of the parties to the contrary, to establish a parol sale of the matter in controversy. This could not be, as it was in contravention of the statute of frauds which was then in force, and required such contract to be in writing. (Hart. Dig., Art. 1451.)

II. Failing in their effort to establish the power of attorney as a deed, the appellant naturally falls back upon the position that, inasmuch as it is conceded that Bray was indebted to Fessenden & Denman, and that the power of attorney was executed with a view of selling the land and

appropriating the proceeds to the payment of the debt, this gave them a power, coupled with an interest in the matter, that was not revocable by the death of Bray.

The utmost that can be claimed is, that Bray authorized Denman & Fessenden, "in his name," and not in their own, nor separately, to sell this land, and by parol evidence we are led to suppose that this power was given with a view to their appropriating the proceeds to the extinguishment of a debt due by Bray to Denman & Fessenden.

We do not believe that the statement of facts thus presented, though perhaps stronger even than the record makes the case, are sufficient to constitute this "a power coupled with an interest," in the legal acceptation of that term.

In the case of Hunt v. Rousmaniere's Administrator, 8 Wheat., 174, and same case, 1 Peters, 1, where this matter was much considered, Chief Justice Marshall, in delivering the opinion of the court, held this language, which seems to be a complete definition of what is meant by "a power coupled with an interest:"

"It becomes necessary to inquire what is meant by the expression 'a power coupled with an interest.' Is it an interest in the subject on which the power is to be exercised, or is it an interest in that which is produced by the exercise of that power? We hold it to be clear, that the interest which can protect a power after the death of a person who creates it, must be an interest in the thing itself. In other words, the power must be engrafted on an estate in the thing. The words themselves would seem to import this meaning. 'A power coupled with an interest' is a power which accompanies or is connected with an interest. The power and the interest are united in the same person. But if we are to understand by the word 'interest,' an interest in that which is to be produced by the exercise of the power, then they are never united. The power to produce the interest must be exercised, and by its exercise is extinguished. The power ceases when

17—xxviii

the interest commences, and therefore cannot, in accurate law language, be said to be 'coupled' with it."

Under the above definition of Chief Justice Marshall, it is plain, that in reality Denman & Fessenden, not having an interest in the thing itself, but only in the proceeds for the payment of their debt, had not that power, coupled with an interest, that survives after the death of the principal, and is in its nature irrevocable.

But we go further, and even if the facts of the case were such as to create what is technically called " a power coupled with an interest," we are not prepared to admit that, in this State, under our peculiar probate system, such a power can have any existence. We do not know of any recognition of such irrevocable power by our court, and the decisions in the case of Robertson v. Paul, 16 Tex., 472, and of Boggess v. Lilly, 18 Tex., 200, and Chandler v. Burdett, 20 Tex., 200, and other kindred subjects, where trust deeds were executed to secure the payment of debts, lead strongly to the conclusion, that such a power as that contended for by appellant, even if irrevocable at common law, would in our State, under the operation of our probate system, be held revocable by the death of the principal. In fact, the case of Robertson v. Paul, above cited, is believed to be conclusive on this point.

III. It is clear, if there were an irrevocable power created, which we deny, then it was a joint, and not a joint and several, power; and that Fessenden could not execute it alone; and that, to make the execution complete, both Fessenden and Denman must join at the same time. (Story on Agency, §§ 42 to 45.)

If this be correct, we hardly deem it necessary to show, by argument or authority, that the attempted confirmation of Fessenden's act by Denman, long after the death of both Fessenden and Bray, could not cure the defect.

This in fact is not the case of a defective execution of a power, but there was and could be no execution at all.

Moore, C. J.—On the trial of this cause in the District Court, the appellant, Cox, who was the defendant in that court, offered parol testimony tending to prove a sale by John L. Bray, the ancestor of the plaintiffs, of his head-right certificate for one-third of a league of land to Denman & Fessenden, under whom the appellant claims the land in controversy. The proposed testimony was excluded from the jury by the court, upon the following objections made to it by the plaintiffs, to wit:

1. It tended to vary and contradict a written instrument shown by the defendant to have been executed between the parties at the time of the alleged sale which he was seeking to establish.

2. Such evidence was improper to establish title after so great length of time.

If these objections were improperly sustained, and we are of opinion they were, the judgment must be reversed.

The written instrument to which the first of these objections has reference is a power of attorney executed on the 5th of June, 1841, by John L. Bray to Denman & Fessenden, authorizing them, as his attorneys, and for him and in his name, to locate and receive from the government the necessary patent and title to his claim of land, and to sell, and for him and in his name to make, execute, and deliver good and sufficient deeds and conveyances for the same. Does the contract which the defendant, Cox, seeks to establish by the parol testimony offered by him necessarily tend in any manner to vary or contradict this power of attorney? We think not. The power of attorney does not negative the parol sale of the certificate. They are collateral and independent facts, entirely consistent with each other, but together presenting the result of the entire transaction or agreement between the parties. Upon the defendant's theory of the case, the evidence proving the sale of the certificate does not contradict the power of attorney, but explains the object and purpose of its execu-

tion. It shows it was merely ancillary to the sale of the certificate. It was probably erroneously supposed by the parties the most certain and effectual mode of securing to the purchasers the benefit of the contract. It is quite likely that they regarded the power to locate the certificate and to receive from the government the patent for the land, and to dispose of it at their discretion, as tantamount, if not superior, to a written conveyance of the certificate. It is a well-known fact, that this course was frequently pursued in transactions of this kind at that day.

The second objection to this testimony might be urged with much propriety, if the party by whom it is presented was the actor in the case. In other words, if it were relied on as a sword for attack, instead of a shield for defense. The length of time which has elapsed since the occurrence of the transaction referred to in this testimony should and no doubt will subject it to a strict analysis and the closest scrutiny. Its weight and influence may thereby be much diminished with the jury, but it should not on that account be excluded.

That a party has chosen to risk the security of his title upon evidence of a transitory and perishable nature, for a longer or shorter period of time, does not deprive him of the right, when attacked, of availing himself of it, if still within his power. If so, time, instead of curing the imperfections and defects of just and honest titles, would be the most potent engine for their destruction. It would be to reverse the law of limitation, and give the plaintiff instead of the defendant the benefit of his delay in the prosecution of his alleged cause of action.

Without, however, elaborating the question at greater length, we conclude by saying, that the court erred in excluding the testimony offered by the defendant, so far as the same was intended and went to defeat the right of the plaintiffs to recover. But, unless for reasons not presented in the present record to account for delay, it cannot

be made the basis for relief on his part in the nature of a demand for specific performance, or to support a prayer to divest the plaintiffs of the legal title to the land for his benefit.

The plaintiffs also excepted to this testimony, upon the ground that the alleged contract was in contravention of the statute of frauds, and therefore void, but the objection was overruled by the court. This ruling being favorable to the appellant, whether right or wrong, cannot affect the result of the case on the present appeal; but as the decision of the question may be necessary to a final determination of the cause, we deem it proper to say that the court, in our opinion, did not err in its refusal to sustain this objection.

The contract was not for the sale of land. It was for the sale or assignment of the unlocated certificate. The certificate of itself did not give to or vest in the grantee a title to land, but a right to acquire it. It was merely the obligation of the government, entitling the owner of it to secure the designated quantity of land by following the requirements of the law. We see no difference in principle between the parol sale of the entire certificate, and a contract for a part of it to a locator in consideration of his selecting the land and procuring the patent. (Watkins v. Gilkerson, 10 Tex., 340; Evans v. Hardeman, 15 Tex., 481; Miller v. Roberts, 18 Tex., 19.) Or from a parol assignment of a bond for title, which was held valid by this court in the case of Bullion v. Campbell, Tyler term, 1864. (27 Tex., 653.)

But even if the contract were within the statute, the payment of the purchase-money, the location of the land, the procuring the patent, and the possession and improvements made upon it by the defendant and those under whom he claims, would, as has frequently been decided by this court, have presented sufficient equity to have entitled the defendant to a decree of title, if he had brought a suit

for this purpose within a reasonable and proper time. (Dugan v. Colville, 8 Tex., 127; Reynolds v. Johnson, 13 Tex., 216; Williams v. Smith, 15 Tex., 35; Taylor v. Ashley, 15 Tex., 50.) And it certainly could not be less effectual to protect him against the wrongful efforts of the vendor to deprive him of his possession and equitable title to the land, however long he may have delayed his suit for this purpose.

With a view to the future disposition of the case, it is also proper for us to say, that the title presented by defendant did not sustain his plea of limitation of three years' adverse possession. The defendant's evidence of title to the certificate was excluded, and therefore he did not have a consecutive chain of transfer from the sovereignty of the soil down to himself, either regular or irregular; nor, if his evidence had been received, would his defense under the statute have been strengthened; for one link in his chain would have been established merely by parol evidence, while manifestly nothing less than a written memorial, although it may be irregular, will satisfy the statute. This evidence, as we have seen, should have been admitted to support the defendant's claim to the superior equitable title, but not to maintain his defense under the 15th section of the statute of limitation.

To establish this defense, the defendant must rely upon his written memorials of title, and by these, as we have said, he fails to connect himself with the patent from the government. The deed to McKinney does not purport to have been made by virtue of the authority conferred by the power of attorney to Denman & Fessenden. Its efficacy to pass title to McKinney depends upon the alleged parol sale of the certificate, and not upon the power of attorney.

But if this were otherwise, and this deed and the subsequent confirmation of it by Denman, although a defective and irregular execution of the power conferred upon them,

should be held sufficient to constitute color of title when viewed alone in connection with the paper muniments of title, this assumption would at once be rebutted and destroyed when it is shown, as was the case, that the authority to execute the deed or to convey any title whatever had lapsed or determined by the death of the principal previous to the attempt to exercise it. In such case, the deed is not merely irregular, it is absolutely void. It can no more serve as a connecting link in a chain of title, than a deed made on the assumption of a power which never in fact existed. In such cases, if a party seek to defend himself by limitation, he must rely upon one of the other sections of the statute; he clearly cannot do so under this one.

For the error of the court in sustaining the exceptions of the plaintiffs to testimony offered by the defendant, the judgment is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.