## A. V. SEWELL v. J. P. LAURANCE.

SUPREME COURT, AUSTIN TERM, 1882.

*Appeal—Affidavit in lieu of appeal bond.*—Where the record contains enough to fix the Supreme Court jurisdiction, motion to dismiss apppeal on the grounds that the affidavit filed in lieu of appeal bond does not describe the judgment, nor the record show that affiants were parties to the suit, should be overruled.

*Land certificate.*—A charge that land certificates are personal property and pass by delivery, is correct, though the doctrine, as a general rule, applies to unlocated certificates.

*Same—Change from personalty to realty—Charge.*—The unlocated certificate is not land. It merely gives to the holder the right to acquire land. As soon as it is located, the right of the holder attaches to the land upon which the location is made, and the property becomes real estate; and, in order to pass the title, the conveyance must be in writing. (See this case for facts supporting charge that the delivery of certificates would pass the title to the land acquired thereunder.)

*Same—Wife's separate interest—Transfer—Privy acknowledgment.*—Article 1003, P. D., by its terms, seems to apply to personal as well as to real property, but it does not declare any other mode of conveyance absolutely void. When freedom of will and action upon the part of the wife is secured, the transaction commends itself, in point of equity, to the conscience of the court, and the conveyance will be sustained, notwithstanding the want of a privy examination.

Appeal from Dallas county.—This suit was filed May 4, 1871, by appellee, against appellants, Alexander V. Sewell, Thos. Ritter and his wife, Sarah, Vienna Wilson and Rebecca Cleveland, heirs at law of Thos. Sewell and Frances Sewell, his wife.

The object of the suit was to remove cloud from the title to certain lands held in Dallas county by plaintiff. The petition alleged that in 1850 a Mercer Colony cercificate for 320 acres of land issued to James M. Sewell; that on the same day a similar certificate for 320 acres of land was issued to Thomas J. Sewell; that said James M. and Thomas J. Sewell were sons of Thomas and Frances Sewell; that soon after receiving the certificates, said James M. and Thos. J. Sewell died intestate and unmarried, leaving their parents and brothers and sisters surviving them; that their parents inherited the certificates, sold and delivered them to plaintiff, who located them upon the land described in the petition, and obtained the patents, which issued in 1870; that plaintiff paid all the expenses of surveying and procuring the patents, which issued to the heirs of James M. and Thomas J. Sewell; that defendants are setting up some claim to said land which casts a cloud upon plaintiff's title.

October 6, defendants answered by special demurrer and general denial.

January 22, 1875, plaintiff amended, making new parties defendant, averring that Thomas and Frances Sewell died intestate, leaving the following named children: Alexander V. Sewell, Andrew J. Sewell, Sarah Ritter, wife of Thomas Ritter, Vienna Wilson and Rebecca Cleveland. That Andrew J. Sewell died, leaving a widow, Adeline Sewell, and the following named minor children, to-wit: Andrew J. Sewell, jr., George W. Sewell, John Sewell and James Sewell. That Vienna intermarried with one Heard. That Rebecca first married Rutherford and afterwards Cleveland, and died leaving two minor daughters, viz, Susan Rutherford and P. A. Rutherford, all of whom are made parties defendant.

September 3, 1875, defendants excepted to plaintiff's pleadings, because he did not allege the time of the deaths of James W. and Thomas W. Sewell nor the date when he bought the certificates.

July 8, 1876, plaintiff amended, stating his purchase of the certificates on the seventeenth of March, 1855. That Thomas J. and James M. Sewell died about the year 1851; that Frances Sewell died between January, 1861 and 1864, and that Thomas Sewell died between January, 1867, and January, 1869.

February 8, 1876, defendants pleaded limitation of two, three, four, five and ten years.

July 17, 1876, the guardian *ad litem* of the minors answered by general exception, general denial and the statute of limitation of two, three, five and ten years.

September 16, 1876, plaintiff again amended, averring that he bought the certificates from Thomas and Frances Sewell; that the said Frances delivered them to him with her own hands, and that she and her husband named the consideration. That said Frances, by her own acts and representations, induced him to buy them; that she acted freely, voluntarily and without constraint of her husband, and that both she and her husband throughout their whole lives expressed themselves satisfied with the sale, and wished not to retract it, whereupon plaintiff says defendants are estopped to deny the sale.

The cause was tried July 5, 1877.

The testimony showed that the certificates were finally delivered to plaintiff by Thomas Sewell and wife on the seventeenth of March, 1855, but that before this time plaintiff had been negotiating with them for the purchase; had paid a part of the price; had had the certificates in his possession, and on the eighth of that month he had located part of the land, and had bargained a part of it to a third party, to whom Sewell and wife made a deed on the seventeenth—the same day the certificates were delivered; that Sewell and wife were willing to make a deed to plaintiff, but he preferred to wait until he could get out the patents; that Mrs. Sewell herself delivered the certificates; was entirely satisfied with the trade, and so continued ever afterwards until her death.

That it was upon her persuasion that her husband finally consented to the sale. That some time before the delivery of the certificates, plaintiff had delivered to Sewell and his wife a yoke of oxen, as part of the price, and on that day he gave them a house worth $70 or $75, paid some money, and executed them a note. There was some dispute as to whether this note had been fully paid.

The reason why the issuance of the patents was delayed so long, was that their surveys conflicted with another survey, and that plaintiff finally bought out the opposing claim and obtained the land, paid taxes on it, and it appears from the evidence that he had a large part of it enclosed. It does not appear from the evidence that Thomas and Frances Sewell, or either of them, had ever claimed the land since their sale to plaintiff. Nor was there any evidence of possession by any of the defendants, or acts of ownership, on payment of taxes by them.

In the charge, the court, after explaining to the jury that the pa-

rents each inherited a half-interest in the certificates as their sepa-rate property; further charged them that land certificates are per-sonal property, and that a parol sale and delivery passes the title to the certificates and to the land upon which they are located, and that it was immaterial whether the certificates were at the time lo-cated or not.

That Thomas Sewell had no power to sell his wife's interest in the certificates, but that if Frances Sewell freely and voluntarily sold her interest in the certificates to plaintiff, delivered them to him and received payment for them, without the influence or persuasion of her husband, the sale would be binding upon her heirs, and they would be estopped to deny the title of plaintiff. But if the jury were not satisfied that the consideration had been paid by plaintiff, they should find for defendants.

Defendants asked a number of charges, which were refused:

1.   That if the evidence showed that at the time of the sale the certificates had been located, they were merged in the land, and plaintiff must show a written conveyance.

2.   That unless the proof showed that the whole consideration had been paid, they should find for defendants.

3.   That Frances Sewell, being a married woman, her convey-ance was invalid, unless in writing, and duly acknowledged by her upon privy examination.   Several charges were asked upon the sub-ject of estoppel.

Verdict and judgment for plaintiff, and defendants appealed.

The assignments of error relate to the charge of the court and the refusal of charges asked.

John J. Good and E. G. Bower for appellants.

Opinion by Delaney, J.—The transcript in this cause was filed in the Supreme Court April 1, 1878.

At the present term appellee has filed a motion to dismiss the ap-peal upon two grounds:

First.   Because the affidavit filed in lieu of an appeal bond does not describe the judgment.

Second.   Because the record does not show that the affiants were parties to the suit.

As to the first objection, we think the record contains enough to give the Supreme Court jurisdiction, and that is sufficient.

In the affidavit the affiants, after giving the style of the cause, state that they are parties defendant to the above entitled cause,

against whom judgment has been rendered in favor of plaintiff,
and sign their names as follows: L. A. Sewell, Susana X Rutherford,.
her                                 her                             mark
Permuna X Rutherford.   Among the names of the defendants in.
    mark
the record we find Adeline. Sewell, Susan Rutherford and P. A. Rutherford.

The motion to dismiss should be overruled.

The first assignment of error questions that part of the charge which instructs the jury that a land certificate is a vendible commodity, and may be disposed of by sale and delivery by parol, and the purchaser acquired a title to the certificate, and any land that would be acquired by virtue of such certificate, and it would be immaterial whether the certificate was located or unlocated.

The first part of this charge, to the effect that land certificates are personal property, and pass by delivery, is certainly correct. We have a number of decisions which fully sustain this part of the charge. (Stone v. Brown, 54 Texas, 330; Johnson v. Newman, 43 Texas, 640; Cox v. Bray, 28 Texas, 247; Randon v. Barton, 4 Texas, 292.)   The cases, however, refer, as a general rule, to unlocated certificates.

The unlocated certificate is not land. It merely gives to the holder the right to acquire land. As soon as it is located, the right of the holder attaches to the particular land upon which the location is made, and the property becomes real estate, and in order to pass the title the conveyance must be in writing. But the judge charged that the delivery of the certificates would pass the title to the land acquired by means of them, whether they were at the time located or not.

This is questioned by the assignment, and, as a general rule, it is not correct. (Simpson v. Chapman, 45 Texas, 561.) But to determine upon the correctness of a charge, we should consider it not as a general proposition, but in its application to the facts proven. And when so considered, our opinion is that the charge was not erroneous. The general rule above stated is based upon the almost universal practice that the certificate shall be located by or for the owner. As soon as this is done, the right of the owner attaches to the land, and all subsequent transfers must be in writing.

In the present case, the certificates (those which were located be-

fore the final delivery) were not located by or for Sewell and wife, or either of them, or for the purpose of obtaining the land for them. They were located by the plaintiff, pending a negotiation for their purchase, and either after or contemporaneously with the payment of a part of the consideration, and with the intent that the land should become the property of the plaintiff. Whether the location was actually made a few days before or a few days after the bargain was finally consummated is not perfectly certain, nor do we deem it material. The transaction was not called in question until many years after it had taken place, and until Sewell and his wife had both been dead a number of years. No living witness could give the precise dates of the different events. Resort was had to the dates of certain records and private papers to determine the matter. The records of the county surveyor showed that a part of the land had been located on the eighth day of March, 1855, and a part of it more than a year afterwards. An old note of plaintiff's was hunted up, after a protracted and rather curious search. This note had been delivered by him to Sewell, and was apparently for a part of the purchase money. The note was dated March 17, 1855. The inference was that this latter date was the day of the sale, and that, as a part of this property had for the space of seven days been real estate, it could not pass by the delivery of the certificates. The defendants therefore stand upon their legal rights, and insist that they are the owners of this land.

One of the witnesses, however, who was present on the seventeenth of May, states that before that time plaintiff had paid a part of the consideration, had the certificates in his possession, had sold to witness a part of the land, surveyed it, and that on the seventeenth day of May Sewell and his wife made a deed to witness in pursuance of plaintiff's sale to him.

Under all the circumstances, we think that the delivery of the certificates by Mrs. Sewell on that day was only the end of a negotiation which had been pending for some time, and that the title passed.

This might seem sufficient to dispose of the case; but appellants insist that Mrs. Sewell was a married woman; that her interest in the land or certificates was her separate property, and, whether the property were real or personal, the conveyance must have been in writing and acknowledged by her upon privy examination. (P. D. 1003.)

It is true that the statute, by its terms, seems to apply to personal as well as real property; but the Supreme Court, in passing upon a case where the wife had disposed of personal property without privy examination, said that the statute did not expressly declare absolutely void any other mode of conveyance. It great object seems to have been to secure freedom of will and action upon the part of the wife. When this is clearly shown, and the transaction commends itself, in point of equity, to the conscience of the court, the conveyance will be sustained, notwithstanding the want of privy examination. (Womach v. Womach, 8 Texas, 307.)

Suppose we admit that the contract was not binding upon Mrs. Sewell, and that she might, within a reasonable time, have had it set aside upon restoration of the purchase money, still it does not follow that the right would survive to her descendants for an indefinite period of time.

The case may be summed up thus: The plaintiff made this purchase in March, 1857. The verdict establishes the fact that he paid the consideration. For more than twenty years he was occupied with his endeavors to perfect the title, which he finally accomplished by buying out and thus quieting some opposing claims. A quarter of a century after the original purchase the heirs of the vendors, who have meantime done nothing towards procuring and perfecting the title, come forward and ask that the land, with its accumulated value from the labor and expense of the plaintiff, be decreed to them, because their grandmother did not sign a deed and acknowledge it properly. And they do not propose to make the slightest return to the plaintiff. To state such a proposition is to answer it. (See Hurt v. Turner, 9 Texas; Wells v. Alexander, 21 Texas.)

Our opinion is that the judgment should be affirmed, and it is so ordered.