E. HOLLIS ET AL. v. W. B. DASHIELL ET AL.

| 52 | 187. |
| 75 | 400 |
| 76 | 488| |

1. ANCIENT INSTRUMENT—EVIDENCE.—A paper purporting to be a transfer of a headright claim, dated January 9, 1838, was originally written with blank spaces, which were afterwards filled up with amounts and names. In the body of the instrument the vendor's name was spelled differently in different places, though evidently not written thus by himself. This transfer had, at various times, been recognized and acted on by parties claiming under it until May, 1879, when it was offered in evidence as the basis of title, after showing that it had been found in a place where, under the circumstances, it might have been reasonably looked for, and came from a proper custody, accompanied with the evidence of several witnesses, who testified to their belief of the genuineness of the signature of the vendor : Held—

    1. That the custom of preparing such transfers in blank was so frequent as not to require explanation.

    2. The fact that the vendor's name was spelled differently in different places in the instrument, would not vitiate it.

    3. It was an ancient instrument, and the evidence was sufficient to support a verdict in favor of its genuineness.

    4. Though made before the issuance of the headright certificate, it took effect on the certificate when granted.

    5. Such a transfer constituted, as against the heirs of the vendor, a superior title to the land covered by the headright certificate, and which was patented in the name of their ancestor.

2. TRESPASS TO TRY TITLE.—Holders of a legal title cannot be ejected by parties having no equity.

3. GUARDIAN AD LITEM—ADMINISTRATOR—VOID AND VOIDABLE.—Though consent to a judgment by a guardian *ad litem* against his ward, or an administrator against the estate, in the absence of evidence, may be erroneous, the judgment is not void by reason of such consent.

4. CASES APPROVED.—Bloom v. Burdick, 1 Hill, (N. Y.,) 143, and Porter's Heirs v. Robinson, 3 A. K. Marsh., 253, approved.

5. JUDGMENT.—The validity of a judgment against parties before the court, properly served, is not affected by the fact that it is void as to other defendants not actually served with process.

6. EVIDENCE—PRESUMPTION.—The law will presume the death of the subscribing witnesses to an instrument which is over thirty-five years old, so as to admit evidence of their signatures.

APPEAL from Kaufman.   Tried below before the Hon. J. E. Dillard, special judge.

The case is stated in the opinion. The instructions of the court below are too lengthy for insertion.

*W. H. Wood,* for appellants.

I. The court erred in charging the jury that a confirmation of the sale from Brooks, administrator of Phelps' estate, was necessary.

II. The court erred in that portion of the charge to the jury, in reference to the transfer of the Benjamin Kimberling certificate from William Hollis to E. Rodolphus Besancon, the court in said charge having taken it for granted that said transfer was genuine, whereas the execution and delivery of said transfer was a question of fact for the jury to determine.

III. The transfer of the Benjamin Kimberling league and labor headright certificate from William Hollis to E. Rodolphus Besancon, dated October 14, 1845, (the original of which is sent up with the transcript for this court's inspection,) if valid, conveyed only an equitable title to any land afterwards acquired by virtue of said certificate, and would not be such a superior outstanding title as would defeat plaintiffs in this suit.

IV. The execution, delivery, and genuineness of said transfer from William Hollis to E. Rodolphus Besancon should have been submitted to the jury for their determination.

V. The court erred in charging the jury that defendants, being in possession of the land in controversy, are presumed in law to be rightfully in possession, and that they have a better title to the same than any one else, including both plaintiffs and intervenors, and are entitled to hold the same in this suit unless a stronger or superior title is established, by competent and sufficient evidence, to be in one or the other of their adversaries.

VI. The court erred in that portion of its charge in which the jury are instructed, that "the introduction of the original patent to the land granted to the Kimberling heirs had the effect to show that the judgment of the Harrison-county Dis-

trict Court has been carried into effect, and that the defendants have a good and legal title adjudged to them by a court of competent jurisdiction."

The judgment referred to was rendered by said court, in Harrison county, July 9, 1869, in favor of W. B. Dashiell against intervenors, for the land in controversy. Said land was patented in 1858.  (27 Tex., 434; 28 Tex., 97; 43 Tex., 1.)

VII. The court erred in its charge in reference to the pretended deed from William Hollis to E. Rodolphus Besancon, wherein it is stated that said deed was brought into court and not denied by plaintiffs nor by any one.

The court charged the jury as here stated. ·Plaintiffs did deny the validity of said deed, and objected to its being read in evidence.  (27 Tex., 434; 28 Tex., 97; 43 Tex., 1.)

*J. S. Woods,* for intervenor appellants.

I. The court erred in admitting in evidence, in this case, the transfer from Benjamin Kimberling to Isaac Campbell, because it is insufficient as a deed to convey Kimberling's league and labor of land in Kaufman county, Texas.

There is no description of land in the deed; there is no number given to the certificate; there is no date of any survey at issuance of Kimberling's certificate.  (14 Tex., 273; Paschal's Dig., art. 1000; 4 Kent's Comm., 8th ed., p. 510, mar. p. 460; Norris *v.* Hunt, 51 Tex., 609.)

II. The transfer, coming from Dashiell, did not come from the proper custody.

Defendants all claimed the land through and by virtue of a judgment obtained in Harrison-county District Court. The facts proved do not show any connection between them and Isaac Campbell.  (28 Tex., 660; 49 Tex., 582; 1 Starkie on Ev., 373, 379, 381, 383, 384.)

III. The deed from Kimberling to Campbell bears upon its face marks of suspicion.  [Original deed sent to this court by motion of intervenors for inspection.]  Said deed appears to be a transfer to land not then located.

IV. Said deed was dated January 9, 1838, and Kimberling's headright certificate had not issued at that date.

The date of deed from Kimberling to Campbell was January 9, 1838, and the date of the certificate by which the land in controversy was located was February 8, 1838.

The name of Benjamin Kimberling appears to have been spelled differently in three different places in said deed.

V. It does not appear by proof that said instrument was ever executed and delivered by Kimberling to Campbell.

VI. The great consideration mentioned in said deed casts suspicion upon the instrument.

The words "two thousand dollars" mentioned in said deed appear to have been subsequently written therein in a different handwriting and ink.

VII. The statement of facts does not show any attempt by plaintiffs or defendants to remove the suspicious circumstances accompanying the introduction of said deed. (Phil. on Ev., 318–320.)

VIII. The deed from Kimberling to Campbell did not pass anything more than an equitable interest in the land after its location.

IX. The deed introduced in evidence from Kimberling to Campbell did not prove within itself a superior, paramount outstanding title against these intervenors.

The certificate of Benjamin Kimberling, by which the land in controversy was located, was not issued by the government to him at the date of this deed from Kimberling to Campbell. There is no proof that assists or establishes the genuineness of the deed, except the deed itself.

X. An equitable title cannot be set up to defeat the legal title after the lapse of forty years.

XI. The court erred in admitting in evidence the judgment obtained in Harrison-county District Court in favor of W. B. Dashiell against these intervenors, because the same shows on its face to be a nullity, is void *ab initio*, &c.

The judgment shows that a guardian agreed to the decree

divesting their interest to the land in this suit out of his wards and vesting it in W. B. Dashiell. It shows that Hall, the administrator of Kimberling's estate, agreed to the same. The decree shows a suit against an administrator and guardian *ad litem*, and that there was no issue joined between them and, so far as they were concerned, no real prosecution, nor real defense, nor that there was any controversy about the trust estate; that all that was done was based upon an agreement of the parties exercising duties of the highest trust. (49 Tex., 247; Paschal's Dig., art. 1478; 31 Tex., 239; Freem. on Judg., secs. 250, 545; 31 Md., 336; 24 N. Y., 72; 6 Hill., 242; 57 Ill., 244; 36 Md., 276; 43 Cal., 306; 29 Wis., 34; 48 Miss., 643; 41 Miss., 89; 42 Miss., 506; 47 Miss., 170.)

XII. The trustee cannot confess a judgment so as to bind the trust estate.

The intervenors showed that Hall was the administrator of Kimberling's estate, and O. Hendrick was guardian *ad litem;* that Emily Kimberling was administratrix with Hall, but not sued as such; that they were agents of the court, and acted in trust for these intervenors. (33 How., 278; 28 N. Y., 242.)

XIII. The proceedings of the District Court of Harrison county that rendered the judgment show that these intervenors were to all intents and purposes third parties to said judgment, and the same shows a fraud upon these intervenors. (21 Tex., 753; 8 Tex., 146; 39 Tex., 169; 10 Tex., 4; Freem. on Judg., secs. 256, 336, 337, 489, 545; 9 East, 299; 63 Penn., 320; 23 Ga., 168; Perry on Trusts, pp. 160, 256; 1 Story's Eq., secs. 250–252; Vanmeter *v.* Jones, 2 Green Ch., (N. J.,) 520; 2 Am. Rep., 135.)

*J. J. Hill,* for appellees.

I. The conveyance of Benjamin Kimberling to Isaac Campbell of his right to a league and labor of land, passed the title to the certificate to said Campbell which issued afterwards, and passed the title to the land which was acquired by virtue of the said certificate to the said Campbell and his assigns.

II. The conveyance from Benjamin Kimberling to Isaac Campbell is genuine. [Counsel reviewed at length the testimony to sustain his statement.]

III. The conveyance from William Hollis to E. Rodolphus Besancon of the Benjamin Kimberling league and labor certificate No. 79, passed all title out of the said Hollis to the said certificate and the land acquired by virtue of the said certificate, and left nothing to vest in his heirs, the plaintiffs in this suit. The plaintiffs in this suit claim as the heirs of William Hollis. The said conveyance bears date October 4, 1845. It is regular in form.

IV. The deed from William Hollis to Besancon was admissible as an ancient writing. It came from the proper custody. The defendants claimed under it. It is free from suspicion.

GOULD, ASSOCIATE JUSTICE. — The subject-matter of this litigation is a league and labor of land in Kaufman county, patented in the name of Benjamin Kimberling August 30, 1858. The headright certificate of said Kimberling, which was issued February 8, 1838, was first located in the name of Kimberling in Bastrop county, and in 1844 or 1845 was located on the land in controversy.

The heirs of William Hollis commenced this suit in April, 1875, bringing an action of trespass to try title against Dashiell and others. They sought to establish (1) an alleged transfer of his headright claim by Benjamin Kimberling to Isaac Campbell, dated January 9, 1838; (2) copy of deed from Campbell to Augustus Phelps, of date February 20, 1844, conveying the Bastrop-county league and labor of land, surveyed and then held by virtue of said Kimberling's headright certificate; (3) copy of deed from Brooks, administrator of Phelps' estate, of date May 2, 1843, conveying said certificate to Felix G. Lovell; (4) deed from Lovell to their ancestor, William Hollis, of date April 1, 1844. Through these transfers it is claimed that William Hollis became the owner of the

Kimberling certificate, and that plaintiffs, as his heirs, became the equitable owners of the land patented by virtue thereof.

The widow and heirs of Benjamin Kimberling intervened, claiming the land as theirs, basing their claim on the patent, and denying the genuineness of the alleged transfer by Kimberling to Campbell. They also attack and seek to have vacated as fraudulent, and based upon an agreement procured by fraud, a certain judgment of the District Court of Harrison county, of date July 1, 1869, rendered in a case wherein W. B. Dashiell was plaintiff, and the intervenors (including two minors) and Robert Hall, administrator of the estate of Kimberling, were defendants. That judgment purports to divest out of the defendants in that case the title to the league and labor of land patented in the name of Kimberling, and to vest it in said Dashiell.

The defendants all claimed under the defendant Dashiell. Dashiell's wife was the only daughter and sole heir of John S. Greer, and she being dead, Dashiell was the executor of her will. He produced on the trial the original transfer from Kimberling to Campbell; also a transfer from William Hollis to E. Rodolphus Besancon, of date October 14, 1845; also a receipt from R. S. Terrell showing that the certificate was placed in his hands by Besancon for location October 15, 1845. Dashiell testified that he came into possession of these papers as the husband of the only daughter of John S. Greer, finding them in the same package. No written transfer of the certificate to Greer was produced. Terrell testified that it was his understanding that the certificate changed owners the day he received it, and became the property of John S. Greer; that Greer contracted with him for the location of the certificate for $100. This witness stated that he was related by marriage to the family of William Hollis; had been at his house frequently after he located the certificate; and that Hollis never asked him about the land or made any claim to it. The judgment in favor of Dashiell against the Kimberling heirs was put in evidence by defendants. The

trial resulted in a verdict and judgment for defendants, and both the plaintiffs and intervenors have appealed.

The intervenors urge that the transfer from Benjamin Kimberling to Isaac Campbell was erroneously admitted in evidence, and the original instrument has been sent up for our inspection. We have carefully examined it, and fail to find anything on its face casting such suspicion on its fairness and genuineness as to have justified its exclusion. Evidently it was written originally with some blanks for names and amounts afterwards filled up. This is so often done that it scarcely required explanation. The name of Kimberling is spelled differently in different places in the body of the instrument, but evidently it was not done by himself. The circumstance has but little significance. The same thing occurs in the spelling of the name even in the copy of the Harrison-county judgment. The transfer was an ancient instrument over forty years old, and had been acted on and referred to in sundry other transfers by parties claiming under it. It was produced by Dashiell, who claimed under a judgment founded on it, and seems to us to have been found in a place where, under the circumstances, it might reasonably have been looked for and to have come from the proper custody. But the record shows that several witnesses testified to the genuineness of the signature of Benjamin Kimberling to this transfer, and no opposing testimony was adduced by the intervenors on that point. Certainly the execution of this ancient instrument was sufficiently established to justify its admission in evidence. The question of its genuineness or forgery was fairly submitted to the jury. Although executed before the certificate had issued, it took effect on the certificate when granted. (Walters *v.* Jewett, 28 Tex., 198; Johnson *v.* Newman, 43 Tex., 628.)

The other propositions of intervenors, as to the effect of this transfer, will be sufficiently disposed of hereafter in treating similar propositions by the original plaintiffs.

The intervenors objected to the admission in evidence of

the Harrison-county judgment, contending that, on its face, that judgment is null and void. The recitals of this judgment show that it was rendered in the District Court of Harrison county on July 1, 1869, in a case where W. B. Dashiell was plaintiff, and Emily Kimberling, surviving wife of Benjamin Kimberling, Robert Hall, administrator of the estate of said Benjamin, Euphemia Hall, (wife of said Robert,) Martha L. Kimberling, Emma Poole, and Eugenia Poole, the only heirs at law of said Benjamin, were defendants. The judgment commences thus: "This cause coming on to be heard, O. Hendrick was appointed guardian *ad litem* for Emma Poole and Eugenia Poole. Whereupon came the plaintiff by Hall & Lipscomb, his attorneys, and the defendants, viz., George Lane, their attorney, and O. Hendrick, guardian *ad litem* of the minors, Emma Poole and Eugenia Poole, and it appearing that the petition in this case represents" the transfer by Benjamin Kimberling, on January 9, 1838, of the headright league and labor to which he was entitled, "and that plaintiff, by and through said conveyance, is the owner of said headright,"—proceeding to describe the land on which the certificate was located and state that patent issued thereon to Benjamin Kimberling, his heirs and assigns, by accident, on August 13, 1858, and the claim of plaintiff that "he has right to have said patent delivered up to him, and the title to said land decreed to him from Emily Kimberling, surviving wife," &c., and the other defendants, naming them, proceeds thus: "All of whom are defendants in this suit, and who have answered, stating that they believe said headright was conveyed as specified, and that they had no objections to the decree as prayed for in the petition and in accordance with the agreement and answer filed, and said guardian *ad litem* of Emma and Eugenia Poole having answered that he was satisfied, said conveyance was made as stated in the petition, and in accordance with the agreement filed as part of the answer of defendants. It is therefore considered,"—proceeding to divest the title to the league and labor of land out of defendants and into plaintiffs.

The intervenors had previously introduced a certified transcript of all the papers in said cause, embracing the petition of Dashiell, substantially as described in the judgment; an answer by the guardian *ad litem*, also substantially as described in the judgment; an answer signed by George Lane, attorney for defendants, substantially as described in the judgment, referring to and accompanied with the following agreement:

"THE STATE OF TEXAS, }
   *Harrison county.*    }

Know all men by these presents: That whereas we, the surviving wife and heirs at law and administrator of Benjamin Kimberling, deceased, are about to be sued in the District Court of Harrison county by W. Bond Dashiell, who claims to be the owner of one league and labor of land situate in Kaufman county, located and surveyed on the headright certificate of said Benjamin Kimberling by the board of land commissioners of San Augustine county, and whereas we are fully and entirely satisfied that said Kimberling did convey said headright for a valuable consideration, and whereas the patent has issued in our name, and whereas we were at the expense of $150 in procuring the patent to said land, and have paid tax thereon for several years, we authorize George Lane to appear for us and acknowledge the right of said plaintiff to have a conveyance from us by a decree of said District Court; and in consideration of said amounts paid out, it is agreed that eleven hundred acres of said land shall be conveyed by said plaintiff, after said decree is obtained, to Robert Hall, who has really paid out said amounts.

Given under our hands and scrawls, for seals, this — day of June, A. D. 1869.

                 EMILY KIMBERLING.    [SEAL.]
                 MARTHA L. KIMBERLING.  [SEAL.]
                 EUPHEMIA C. HALL.    [SEAL.]
                 ROBERT HALL.        [SEAL.]
                 EMMA POOLE, }
                 EUGENIA POOLE, } Minors.

Attest: D. F. FREELON.

I, W. Bond Dashiell, the plaintiff in the suit within mentioned, agree to the terms of compromise mentioned.·

Given under my hand this — day of June, 1869.

W. BOND DASHIELL.

Attest: D. F. FREELON."

Intervenors say that the judgment is void because based on the agreement of a guardian *ad litem* and an administrator, and not upon evidence adduced on any issue joined. This proposition cannot be maintained on authority, and has been expressly negatived by this court. (Gunter *v.* Fox, 51 Tex., 383.) It may be true that a guardian *ad litem* cannot consent to a judgment against the minor, or an administrator against the estate, so as to waive proof, and that a judgment so obtained is erroneous; but, after examining such of the authorities cited by intervenors as are accessible to us at this place, we are satisfied that the judgment cannot be held void because it was agreed to as stated. (Bloom *v.* Burdick, 1 Hill, (N. Y.,) 143; Porter's Heirs *v.* Robinson, 3 A. K. Marsh., 253; Tyler on Infancy, p. 206, citing Barber *v.* Graves, 18 Vt., 290; White *v.* Albertson, 3 Dev., (Law,) 241.)

A more difficult question is, whether the infants were ever made parties in any such way as to authorize the court to take jurisdiction as to them and appoint for them a guardian *ad litem*, and whether the judgment as to the minors be not a nullity. This question is not made by any of the assignments of error, nor is it involved in any of the propositions made by counsel. The judgment was admissible in evidence if it were valid as to the surviving widow and other parties defendant, even if it were void as to the minors for want of actual service on them. We do not intend to intimate any opinion that this judgment was, as to the minors, either void or valid. The question is one of too much importance and difficulty to be passed upon without the aid of investigation by counsel, its decision not being, we think, essential to the disposition of this case.

In our opinion, the judgment was not, on its face, void, and the court did not err in admitting it in evidence.

There is no assignment of error or complaint on the part of intervenors growing out of the manner in which the question of actual fraud in procuring the agreement and the judgment was submitted to the jury. It may be remarked that the court referred that question of fact to the jury, and instructed them that if they believed the judgment was procured by fraud, to disregard it as null and void. The intervenors themselves asked a special charge, submitting that question only in that way, calling for no special verdict thereon. If, under their pleadings and the evidence in the case, they would have been entitled to a verdict that the judgment was procured by fraud, they are in no condition here to complain, and have not complained, that they were injured by the manner in which this issue was treated by the court or jury.

In regard to the assignment of error as to the right of intervenors to a judgment against Hall for one thousand one hundred and seven acres of land, we remark that there is no special prayer for said judgment, nor in the long special charge asked by intervenors and given by the court, nor elsewhere, was the attention of the court called to any such question.

The propositions in the brief of counsel for appellant will next be disposed of, in such order as may be found most convenient.

A link in the chain of title of the plaintiffs was a probate sale in 1843, and administrator's deed thereon, to Lovell. It is complained that the court erroneously charged that a confirmation of this sale was necessary. The court, however, proceeded to tell the jury that if "said sale was acquiesced in ever afterwards by said County Court and by the creditors, heirs, and devisees of said Augustus Phelps, the law would presume that said sale had been confirmed by said court." This additional charge under the evidence must have been disregarded by the jury, or they must have proven that the sale was confirmed. We are clear that the error in this charge, as a whole, was merely formal, and that it could not have prejudiced the plaintiffs.

The seventh assignment of error is to the admission in evidence of the transfer from William Hollis to E. Rodolphus Besancon, of date October 14, 1845. The execution of this instrument was shown by proving the signature of one of the subscribing witnesses—the signature of William Hollis, the maker—and the signature of the officer before whom the instrument was acknowledged by Hollis, in December, 1845. It is objected that the subscribing witnesses were not produced, nor their death proven. After the lapse of thirty years the subscribing witnesses are presumed to be dead, and the evidence adduced was sufficient to admit the transfer. (1 Greenl. on Ev., sec. 570; 1 Whart. on Ev., sec. 732.)

The proof of the execution of this transfer was certainly sufficient to admit it in evidence, even if there were suspicious circumstances appearing on its face. It is claimed that there are such circumstances apparent on the face of the original instrument, which has been sent up with the record. If there be any such, we have failed to detect them, for we do not regard the fact that the spaces before and after the name of the grantee Besancon indicate the insertion of that name after the body of the instrument was written, as a circumstance, of itself, casting any serious suspicion on the instrument.

In this connection we return to a previous assignment that the court erred in its charge in taking it for granted that said transfer was genuine. It would perhaps be a sufficient answer that in the first special charge, given at request of the plaintiffs, the court directly submitted to the jury the question of the effect of any alterations apparent on the face of the instrument. As before remarked, however, the instrument appears to us to be free from anything on its face casting suspicion upon it. Its execution was, we think, clearly established. The evidence given by Terrell tends strongly to show that Hollis, after that transfer, set up no claim to the certificate. Indeed, we look in vain on the face of the transfer and in the evidence for anything which would justify a jury in finding the transfer not to be genuine. It is true that, except as to one labor of

the certificate, no written transfer from Besancon appears. That circumstance would be insufficient of itself, or in connection with anything else in the evidence, to support a finding against the transfer. If the court had declined to submit in any way to the jury the question of the genuineness or validity of the transfer by Hollis, it would have been justified in doing so by reason of the absence of any evidence against it. And if the court, in its charge, committed any error in assuming the genuineness of that transfer, our opinion is that the error was formal only, and operated no injury to the plaintiffs.

The court refused a charge to the effect that the transfer by Hollis conveyed only an equitable title to any land afterwards located by virtue of the certificate, but that it would not be such a superior title as would defeat plaintiffs in their suit. On the contrary, the court, throughout its charge, treated the transfer, if valid, as defeating the right of the plaintiffs to recover, and also treated the transfer by Kimberling to Campbell, if valid, as showing a superior title in Campbell, and defeating the right of intervenors to recover.

It is to be remarked that the plaintiffs, at best, were suing to establish an equitable title or claim, growing out of their alleged ownership of the certificate. If, instead of being such owners, the ownership was elsewhere, their whole claim was groundless. In strictness, such a transfer did not constitute an outstanding or a superior title, but it had the effect to defeat their recovery, at least, as against parties not mere trespassers, but holding a legal title. The legal title was either in the heirs of Benjamin Kimberling, the intervenors, or, by virtue of the judgment against them, was vested in Dashiell and those claiming under him. The holders of the legal title cannot be ejected by parties having no equity. (Shields *v.* Hunt, 45 Tex., 427.)

It may further be remarked that the transfer of a labor of the certificate was complete from Besancon to some of the defendants, and that the evidence of Terrell and other circum-

stances tend to show, at least, a locative interest in those claiming under Greer. In no aspect of the case could defendants be regarded as mere trespassers setting up an equity in a third party with whom they had no connection.

The charge of the court as to the effect of the transfer of the certificate, contains no material error. The intervenors, indeed, in the special charge asked by them, embodied an admission that if their ancestor did transfer the certificate they would have no right to any portion of the land as an inheritance from him.

The other objections to the charge are not regarded as requiring special notice, because they are believed to disclose no material error.

We have disposed of the legal questions involved in the case as presented to us, and find no such error as entitles either the original plaintiffs or the intervenors to a reversal.

In regard to the judgment in Harrison county against the intervenors, the sole question in this court has been as to its nullity, and not as to whether it should have been set aside for fraud.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered November 21, 1879.]