THOMAS M. STONE v. JAMES M. BROWN AND THE FIRST NATIONAL BANK OF GALVESTON.

(Case No. 1064.)

1. LAND CERTIFICATES, TRANSFER OF.— The owner of certain land certificates deposited them with an agent for safe keeping and sale, together with complete transfers in blank, properly acknowledged. The agent deposited the certificates and transfers in blank as collateral security for a loan. In a suit by the former owner to recover the certificates, *held* —

1. The fact that the blanks in the transfers were not filled up did not render the transfers invalid.

2. The land certificates, not being located, were personal property; as such were subject to verbal sale and delivery, and such sale need not be evidenced by writing.

3. There is no analogy between the transfer of such certificates and the transfer of non-negotiable notes; the former is governed by the statute and the rules of mercantile law, the latter by the rules applicable to sales of personal property.

4. There was nothing in the mere fact of hypothecating the certificates to put the party advancing money on inquiry as to who was the real owner.

5. The bank having no notice of the former owner's claim, had the right to rely on the certificates for the reimbursement of the loan.

6. Whether the certificates constituted that character of real estate security which the bank was prohibited from taking, could not be inquired into by an individual; that being a matter between the bank and the government.

7. Equity will not permit a party to take advantage of the defect in the form and manner of a conveyance to which he is a party, to the detriment of innocent parties.

8. The validity of instruments under seal in which blanks are left does not rest solely on the doctrine of estoppel, but on express or implied parol authority given by the grantor to the party receiving the instrument to fill such blanks.

This being the first case returned to the supreme court with an opinion from the commission of arbitration and award, under the act of February 9, 1881, the following conclusions of the supreme court were announced with reference to that tribunal:

1. COMMISSION OF ARBITRATION AND AWARD — STATUTE CONSTRUED. — It was not the purpose of the act of February 9, 1881, entitled "An act to amend an act to create a commission of arbitration and award, and to define the powers and duties thereof, and to make appropriation to pay the salaries of the judges thereof," to relieve the supreme court from the duty of considering and deciding the cases referred by it to the commissions of appeals, but that it might the more rapidly and correctly despatch its business.

2. SUPREME COURT. — When the opinion of the commissioners correctly decides a cause, it will be adopted and published as other opinions of the supreme court. If it be not approved by the supreme court, it will be disregarded in toto, or will be so modified and changed as to make it conform to the view entertained by the supreme court of the law and the facts of the case.

3. SUPREME COURT — COMMISSIONERS OF APPEALS. — The supreme court, in passing on the opinions of the commissioners of appeals, will not review or criticise mere inferences or arguments to illustrate and sustain incidental propositions or views of the commissioner who prepares the opinion, but which are not essential to maintain the correctness of its conclusions.

4. CONSTITUTIONAL LAW — COMMISSION OF ARBITRATION AND AWARD. — The act of February 9, 1881, entitled "An act to amend an act to create a commission of arbitration and award, to define the powers and duties thereof, and to make appropriation to pay the salaries of the judges thereof," is constitutional.

5. CONSTITUTIONAL LAW. — Article 3, sec. 35 of the constitution is complied with, if the title of an act fairly gives such reasonable notice of the subject matter of the statute itself, as to prevent the mischief intended to be guarded against.

6. STATUTES CONSTRUED. — The amendment of the act to create a commission of arbitration and award, and to define the powers and duties thereof, merely added another duty to that originally imposed

on the commission, which was not inconsistent with the object sought to be accomplished by the original act.

MOORE, Ch. J., announced the following as his separate opinion, viz:

1. CONSTITUTIONAL LAW.— The provisions of the act of February 9, 1881, amending the original act creating the commission of arbitration and award, are unconstitutional.
2. SAME:— The act of February 9, 1881, attempted to legislate on a different subject and to accomplish an object distinct from that had in view in the act it attempted to amend.
3. SAME.— The entire subject attempted to be provided for in the act of February 9, 1881, except that embraced in the first section, is in no way indicated by, or expressed in, the title.

APPEAL from Galveston.   Tried below before the Hon. Wm. H. Stewart.

Suit by Thomas M. Stone against appellee, J. M. Brown, the president of the First National Bank of Galveston, to recover twenty-one land certificates of 640 acres each, issued by the state of Texas to T. M. Stone, W. H. Kyle and C. C. Kyle, on a contract for improving the navigation of the Sabine river.   Appellant claimed to be the owner of these land certificates.  About the 1st day of May, 1877, he deposited the same with Hobby & Post for safe keeping and sale, together with a transfer to each certificate, signed by each of the grantees and acknowledged before a notary public.   The transfers were complete, except that there were blanks for the name of the purchaser, and the consideration was not filled up.   The appellee claimed that it had in good faith and without notice of appellant's claim thereto, made a loan of $4,275 to Hobby & Post, and accepted the land certificates as collateral security, and prayed for judgment against Hobby & Post, and a foreclosure of its lien upon the certificates.

A jury was waived and the case tried by the court. Judgment in favor of appellees as prayed for.

*George Mason,* for appellant.

I. The possession of the land certificates in controversy, together with the possession of such incomplete assignments or transfers as accompanied them, did not import, imply or warrant the assumption that the person having such possession was the owner of the certificates, or was vested with authority to hypothecate them for his own debt; such certificates not being negotiable instruments. And any one dealing with a person having possession of certificates, on their face the property of a third party, although accompanied by such blank transfers, was put upon inquiry as to the rights and authority of the person having such possession; and if he should deal with such person, upon the assumption that he was the owner of such certificates, or had authority to hypothecate them for his own debt, he would do so at his peril. Merlin v. Manning, 2 Tex., 352, 353, 354; Boyd v. Tarrant, 14 id., 230; Ross v. Smith, 19 id., 172, 173, 174; McCown v. Wheeler, 20 id., 373; Wells v. Groesbeck, 22 id., 431; Parker v. Glover, 23 id., 471, 472, 473; Shanks v. The State, 25 Tex. Sup., 341; Dodd v. Arnold, 28 Tex., 101; Viser v. Rice, 33 id., 156; Miller v. Race, 1 Smith's Leading Cases, notes, 258; Girard v. La Coste, 1 American Leading Cases, notes, 323; 2 Robinson's Practice, p. 132.

II. The law determines what are and what are not negotiable instruments; and land certificates, accompanied by assignments in blank, not being negotiable by law, cannot be made so by custom. Meaher v. Lufkin, 21 Tex., 393; Dunlap's Paley's Agency, 5, notes; 2 Greenl. on Evidence, § 251.

III. The defendant, the First National Bank of Galveston, being a national bank under the laws of the United States, and a corporation created thereby, was not capable of acquiring a lien upon the land certificates in controversy, except to secure an antecedent debt; such certificates being regarded by the judicial department of the United States as real property. R. S. of U. S., sec.

5137; Ripley *v.* Withee, 27 Tex., 18; Stevenson's Heirs *v.* Sullivant, 5 Wheat., 207; Brush *v.* Ware, 15 Pet., 111, 112.

*Albert N. Mills,* for appellee.

WATTS, COMMISSIONER. — The appellant had by his own voluntary act placed Hobby & Post in such a position that, as to others they appeared to be the ostensible owners of the land certificates which constitute the subject matter of this litigation. He had placed the same in their hands, together with transfers for each, signed by all the grantees, and acknowledged before a notary public, with authority to sell and deliver the same.

These transfers were in every respect complete, save and except the blank for the name of the vendee and consideration were not filled. In our opinion this did not render the transfers invalid. See Hollis *v.* Dashiell, 52 Tex., 187. Aside from this view, our supreme court has from the first held and treated unlocated land certificates as personal property, so far considered chattels, that they are the subject of verbal sale and delivery, and that such sales are not within the statute of frauds and need not be in writing. Randon *v.* Barton, 4 Tex., 292; Cox *v.* Bray, 28 Tex., 247; Johnson *v.* Newman, 43 Tex., 640.

In the transfer of non-negotiable notes, the statute charges the assignee with notice of every discount and defense against the same which it would have been subject to in the hands of any previous owner; but these discounts and defenses relate to and mean such only as might be asserted against the collection of the note by the maker. And in this respect there is no analogy between the transfer of an unlocated land certificate and the assignment of a non-negotiable note; the one is governed by the statute and the principles or rules of mercantile law, while the other is governed by the general principles of law applicable to the transfer and sale of personal property.

However, in cases where the suit is brought to recover such note itself, as the property of plaintiff, then the analogy would be complete; and in such cases, as a general rule, if the holder purchased or procured the same from the ostensible owner in good faith, for value, and without notice of any adverse claim, he will be held to be the true owner.

There is nothing in the transfers or the manner of hypothecation in this case that would put the bank upon inquiry as to the rights or claims of the appellant, and unless it had actual notice of his rights at the time of the hypothecation, under the familiar rule in equity, that "he who trusts most must lose most," he has no cause of complaint against the bank.

In this case a jury was waived, and the facts as well as the law were submitted to the judge. The only evidence in the record as to actual notice is the testimony of James M. Brown, the president of the bank. He says that he had no notice of appellant's claim or right; that he in good faith, acting for the bank, advanced the money to Hobby & Post, and accepted the certificates as collateral security. The judge found in favor of appellee upon this point, and his conclusions are entitled to the same weight as the verdict of the jury. Bailey *v.* White, 13 Tex., 118.

In our opinion this finding of the judge was fully sustained by the evidence.

The proposition that as appellee is a national bank, created by and organized under the laws of the United States, it could not acquire a lien upon the land certificates in controversy, because such certificates are considered by the federal courts as real and not personal property, and that such banks are prohibited from taking real estate securities for loans, is not tenable. In the first place, land certificates issued under and by virtue of the laws of this state are by our supreme court held to be

personal property, and this construction of our own laws by our own courts fixes the status of this property.

In the second place, the question is one that cannot be raised by an individual, as it has been held by the supreme court of the United States that this is a matter solely between the bank and the government, and that if these banks should make loans upon lands, notwithstanding the prohibition in the federal statutes, that such contracts are good as between individuals, though the government may institute legal proceedings against the bank, on account of the violation of the law, to forfeit its charter or franchise.

In our opinion there is no error in the judgment, and it ought to be affirmed.

AFFIRMED.

MOORE, CHIEF JUSTICE.— On a former day of the term this case, under the provision of the statute adopted February 9, 1881, entitled "An act to amend 'An act to create a commission of arbitration and award, and to define the powers and duties thereof, and make appropriation to pay the salaries of the judges thereof,'" was referred by this court to the commissioners of appeals for examination and report thereon, and said commissioners having reported to us a synopsis of the case and their opinion of the law applicable thereto, together with the judgment which should be rendered thereon, the case is now before us upon the record and synopsis and opinion of the commissioners for our determination.

In announcing for the first time our action in this class of cases, it will not be amiss to say that it was not the purpose and intent of this law to relieve this court from the duty and responsibility of considering and deciding the causes which may be referred to it by the commissioners of appeals, but that the court, by the aid of the reports of the commissioners, might the more rapidly, as

well as the more correctly, dispatch the business with which
its docket is so greatly overburthened. If on an exami-
nation of the report of the commissioners, in connection
with the transcript, the case is found to be correctly de-
cided, the opinion of the commissioners will be adopted
and published, as other opinions of this court. But if in
any case the opinion reported exceeds or falls short in any
essential particular of the measure of our approval, it is
our duty to disregard it *in toto*, or so modify or change it
as to have it conform to our view of the law and facts
of the case.

It is impossible, however, for all men to reason in the
same channel or deduce precisely the same conclusions
from like premises, or that different persons, though they
agree in the facts of a case and judgment which should
be pronounced upon it, should not often disagree in some
matters of deduction and inference which would be found
in the opinion, whether written by the one or the other.
Hence, as a general rule, in passing upon the opinions of
the commissioners, we shall not undertake to review or
criticise mere inferences and arguments to illustrate and
sustain incidental propositions or views of the commis-
sioner who prepares the opinion, but not essential to
maintain the correctness of its conclusions, or even the
vital legal propositions upon which it depends. We will
regard ourselves bound by them to the same extent, and
no further, than we do in respect to similar matters oc-
curring in the course of an opinion by one of the judges
of this court.

An examination of the transcript, together with a full
and thorough consideration of the briefs and arguments
of counsel, satisfies us of the accuracy of the synopsis
made of the case by the commissioners, and the correct-
ness of the judgment indicated in its opinion. In dis-
posing of the case, however, we deem it proper to say,
touching the effect of the blanks in the transfers under

which appellee claims these certificates, that although the proposition announced in the opinion is correct, the case of Hollis v. Dashiell, 52 Tex., 187, cited for its support, does not of itself fully maintain it. That case merely holds that "when a transfer of many years' standing appears to have been originally written with some blanks for names and amounts afterwards filled up" (but whether before or after its delivery does not appear), is a matter of such frequent occurrence as not to require explanation to admit the instrument in evidence.

But in the case of Ragsdale v. Robinson, 48 Tex., 379, this court held that "when a party delivers a deed duly executed, with parol authority to fill blanks, and this is done, he is estopped from denying its validity against a purchaser for value, without notice of the manner of its execution." Which, if sound, must be upon the ground that equity will not permit a party to take advantage of a defect in the form and manner of the conveyance to which he was a party, to the detriment of innocent parties. And a like rule should be applied whenever it is necessary to protect the vendee against injustice and fraud.

But the validity of instruments under seal where blanks are left, does not at the present day rest solely on the doctrine of estoppel, but upon parol authority given expressly or impliedly by the grantor to the party to whom the instrument is delivered, or to whom possession properly comes, to fill such blanks. "Although," says Justice Nelson, "it was at one time doubted whether a parol authority was adequate to authorize an alteration or addition to a sealed instrument, the better opinion at this day is, that the power is sufficient." Drury v. Foster, 2 Wall., 24.

The grounds upon which the contrary opinion has gone in the earlier cases, says Chief Justice Dixon in the case of Van Etta v. Evenson, 28 Wis., 33, "are of the purest

and most unalloyed technicality, originating in a state of things and condition of the law which have long since passed away." And in conclusion he says: "At the present day we labor under no such embarrassment; for the great weight of authority undoubtedly is, that effect will be given to the plain intention of the parties, notwithstanding the technical rules of the early common law with respect to the execution and delivery of such instruments. If it be manifest that it was the intention of the party by whom the instrument was executed, at the time of its execution, that the name of the payee or mortgagee should be afterwards supplied and written in by the person to whom the instrument was delivered, then the rule of law is, that the same may be supplied and written in and complete effect given to such instrument according to such intention." See also McNiel v. The Tenth Nat. Bank, 46 N. Y., 325; Fatman v. Lobach, 1 Duer, 354; Commonwealth Bank v. McChord, 4 Dana, 191; South Berwick v. Huntress, 53 Me., 89; Bishop on Contracts, sec. 372, and authorities cited in note.

In closing what the court deems should be said in disposing of this case, it presents me a fitting occasion to place on record my own opinion regarding the law under which the case was referred to the commissioners of appeals.

I have no doubt the legislature, if it deems it wise policy to do so, has the constitutional authority to enact a law authorizing the supreme court to refer cases pending before it to a commission, to examine and report to it the matters of fact and law which they involve, where the court is in no way hampered or attempted to be embarrassed or controlled in the full and free exercise of its judgment in their determination; but at the same time must say, that in my opinion the provisions in the act of February 9, 1881, previously mentioned, under which this case was referred to the commissioners of appeals, were

unconstitutionally enacted. If I properly understand the views expressed by a majority of the court in passing upon the constitutionality of the law approved July 9, 1869, creating commissioners of appeal, it is held that this last named act in effect merely provided for a board of referees or arbitrators. That all the powers, duties and functions to be performed or exercised by the commissioners under it, sprung out of and are dependent upon the voluntary consent or agreement of the parties. The court could refer no case to the commissioners under the law unless by the consent of the parties. And because of such consent, the commissioners can make an award which it is the duty of this court to enforce, and which this court has invariably carried into effect just as its own final judgments, without question or examination. Under the present law the reference is not made by consent of parties, but by authority conferred upon the court. The commissioners derive the authority which they exercise from the act of the court making the reference, instead of the consent of the parties. In so far as is provided by the present law, the reference to the commissioners seems to me most clearly to be an attempt to legislate upon a different subject and for a distinct object from that had in view in the former law. Yet under the appropriate title for an amendatory act, the entire subject intended to be provided for by the last bill, except that embraced in its first section, is in no way indicated by or expressed in the title. It was the object and purpose of the first of these laws, as has been held by this court, to provide for the arbitration of cases pending in the supreme court, whilst the subject of the second, except its first section, is to regulate the practice of this court to enlarge its power and authority in respect to cases not referred by consent of parties to the commissioners of appeals for arbitration and award. My conclusion, therefore, is, that the second and subsequent sections of this

law should be held unconstitutional, however such a result may be regretted, because the subject matter to which they refer is not indicated in the title of the act, and there is another subject provided for in its first section which is. See Const., art. III, sec. 35.

There is no error in the judgment, and it is therefore affirmed.

AFFIRMED.

[Opinion delivered March 14, 1881.]

BONNER, ASSOCIATE JUSTICE.— In the opinion of a majority of the court, the validity of that part of the statute under consideration, should be sustained upon the general principle that it should be held constitutional unless clearly otherwise; and because it is believed to be sufficiently germain to the original object of the creation of the commission as to be upheld, under the liberal construction uniformly given by this and other courts, in the consideration of similar constitutional objections.

The authorities on this subject are very numerous, many of which will be found in Cooley's Const. Lim. (4th ed.), 178, note 7.

The constitution provides that "No bill . . . . shall contain more than one subject, which shall be expressed in the title." Const. 1876, art. III, sec. 35.

It may be worthy of note, that in the preceding constitution the word "object" was used instead of the word "subject," in the above connection. Const. 1845, art. VII, sec. 24; Const. 1866, art. VII, sec. 24; Const. 1869, art. XII, sec. 17.

It may be presumed that the convention had some reason for substituting a different word from that which had been so long in use in this connection; and that in the light of judicial expressions, the word subject may have been thus substituted as less restrictive than object.

In The People v. Lawrence, 36 Barb., 192, the supreme court of New York say: "It must not be overlooked that

the constitution demands that the title of an act shall express the *subject*, not the *object* of the act.   It is the matter to which the statute relates and with which it deals, and not what it proposes to do, which is to be found in the title.   It is no constitutional objection to a statute, that its title is vague or unmeaning as to its purpose, if it be sufficiently distinct as to the matter to which it refers."

The principal object of this constitutional provision is to advise the legislature and the people of the nature of each particular bill, so as to prevent the insertion of obnoxious clauses, which otherwise might be engrafted thereupon and become the law; and also to prevent combinations, whereby would be concentrated the votes of the friends of different measures, none of which could pass singly; thus causing each bill to stand on its own merits.   Cooley's Const. Lim. (4th ed.), 173; Giddings *v.* San Antonio, 47 Tex., 555; Albrecht *v.* The State, 8 Tex. Court of Appeals, 216.

Although a very salutary provision it has necessarily received a liberal construction.

To require too great particularity in the caption would embarrass legislation and subject it to be often defeated by judicial construction, when the statute otherwise might be unobjectionable and highly beneficial.

Roberts, Chief Justice, in Giddings *v.* San Antonio, 47 Tex., 556, after announcing that similar provisions of our constitution had been held mandatory, says: "While this has been regarded as the settled rule of construction here, in its application, the most liberal construction has been given by the supreme court of this state, in accordance with the general current of authority, to make the whole law constitutional where the part objected to as infringing this part of the constitution could be considered as appropriately connected with or subsidiary to the main object of the act as expressed in the title."

To the same purport is the opinion of Moore, Justice, in

Breen v. R. R. Co., 44 Tex., 306; and in Austin v. R. R. Co., the same learned justice approvingly quotes the following language from Mr. Cooley: "None of the provisions of a statute should be regarded as unconstitutional where they relate, directly or indirectly, to the same subject, have a mutual connection, and are not foreign to the subject expressed in the title."

"So long as the provisions are of the same nature, and come legitimately under one general denomination or object, we cannot say that the act is unconstitutional." 45 Tex., 267, citing Phillips v. Bridge Co., 2 Met. (Ky), 222; Smith v. Commonwealth, 8 Bush, 112; State v. County Judge Davis Co., 2 Iowa, 284; Ins. Co. v. New York, 5 Sandf., 10.

The court of appeals of New York, in commenting upon a similar provision of their constitution, say: "The degree of particularity with which the title of an act is to express its subject, is not defined in the constitution, and rests in the discretion of the legislature. (Sun Mutual Insurance Company v. New York, 4 Seld., 241.) An abstract of the law is not required in the title." Brewster v. The City of Syracuse, 19 N. Y., 117; People v. Briggs, 50 N. Y., 564; People v. McCallam, 1 Neb., 182.

In Battle v. Howard it was held by this court that an "act concerning proceedings in the district court," which gave to executors and administrators the right of appeal to the supreme court without bond, gave also similar right of appeal to the district court from the county court, an entirely distinct and separate tribunal, and that this construction did not violate the constitutional provision. 13 Tex., 345; Murphy v. Menard, 11 Tex., 676.

In the recent case of R. R. Co. v. Smith County, at the late Tyler term (infra), it was decided that the title of an act approved August 21, 1876 (15th Leg., 265), entitled "An act to define the duties, qualifications and liabilities of assessors of taxes, and to regulate their compensation,"

was sufficiently definite and comprehensive, not only to give to the "board of equalization," as a tribunal, the jurisdiction to fix the valuation of property subject to taxation as against the tax-payer, under certain rules and regulations therein prescribed, but also to make their decision final without the right of appeal.

We deduce from the authorities the following as the true test of the validity of a statute under this constitutional provision: Does the title fairly give such reasonable notice of the subject matter of the statute itself as to prevent the mischief intended to be guarded against? If so, the act should be sustained.

The reason of the rule not applying to such cases, the rule itself does not apply.

Mr. Cooley says: "The generality of a title is therefore no objection to it, so long as it is not made to cover legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection." Const. Lim. (4th ed.), 176.

In Mauch Chunk v. McGee, the supreme court of Pennsylvania, in commenting upon an identical clause in their constitution, adopt the language in Alleghany Home's Appeal, 77 Penn. St., 77, that "if the title fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary." 81 Penn. St., 438; Mills v. Charleton, 29 Wis., 407.

Wheeler, Justice, in commenting upon a similar provision under a former constitution, says: "It could not have meant that the word 'object' should be understood in the sense of 'provision;' for that would render the title of the act as long as the act itself. Various and numerous provisions may be necessary to accomplish the one general object which an act of the legislature proposes. Nor could it have been intended that no act of legislation should be constitutional which had reference to the accom-

plishment of more than one ultimate end. For an act having one main or principal object in view, may incidentally effect or be promotive of others; and it would be impossible so to legislate as to prevent this consequence. The intention, doubtless, was to prevent embracing in an act, having one ostensible object, provisions having no relevancy to that object, but really designed to effectuate other and wholly different objects, and thus to conceal and disguise the real object proposed by the provisions of an act, under a false or deceptive title." Tadlock v. Eccles, 20 Tex., 792.

It should be borne in mind that the leading clause in the title to the original act was, "to create a commission of arbitration and award, and to define the powers and duties thereof," and that the amendment under consideration merely added another duty to that originally imposed upon the commission, and which duty was not inconsistent with the object sought to be accomplished by the original act.

This object was to create a commission to aid the supreme court and the court of appeals in the more speedy disposition of their crowded dockets.

It is believed that many instances could be found, if the other pressing duties of the court permitted the examination, in which, as in this case, under a title amendatory of the original title, naming it, additional powers and duties have been imposed upon courts and officers.

It has been decided that if the title to the original act is sufficient to embrace the matters covered by the provisions of an act amendatory thereof, it is unnecessary to inquire whether the title of the amendatory act would of itself be sufficient. Const. Lim. (4th ed.), note 6, 178; note 2, 177; Brandon v. The State, 16 Ind., 197.

Doubtless a more comprehensive and explicit title could have been adopted; yet this one, under the above decisions and many more which could have been cited of like pur-

port, in our opinion, indicate the subject matter of the statute — the creation of a judicial commission, and to define its powers and duties sufficiently to prevent the mischief which it was the intention of the constitutional provision to remedy, and hence to justify us in sustaining the validity of the law.

[Opinion delivered March 22, 1881.]